## WHITNEY vs. LUDINGTON and others.

L. agreed to lease to W. and T., for eleven months, a steam saw mill, in which the latter were to make certain improvements and repairs, and to run the mill with due diligence, and L. was to advance $1,000 for making such improvements and repairs, and to bear one third of the expense of the same above that sum. The lumber, when manufactured, was to be shipped to Chicago to some one whom L. should designate, to be sold; and the proceeds after paying freight, to be applied as follows: seventy-five cents per M. feet to be paid L., on account of rent of the mill; $1.75 per M. to be paid W. & T. as expenses of manufacturing the lumber; from the residue L. was to be paid any advances made by him for logs to stock the mill, with interest. After all expenses for logs, and for manufac-

turing, shipping and selling the lumber, were paid, W. & T. were to pay L. one fourth of the net proceeds of the business. *Held*, that under this contract L., W. & T. were partners, and jointly liable as such for repairs to the mill.

APPEAL from the Circuit Court for *Oconto* County.

Action against *James Ludington*, *William H. Whitcomb* and *John R. Tracy*, for the value of certain repairs to a saw-mill, alleged to be the property of said *Ludington*, and to enforce a mechanic's lien upon said mill and other real property. The complaint alleges that the repairs were made in March, 1861, at the request of *Ludington;* that in making such request he " acted as well in behalf of the defendants *Tracy* and *Whitcomb*, who were then partners, and as their agent, as for himself;" and that it was made " for the benefit of [*Ludington*] himself as the owner of said mill, and for the use and benefit of said *Tracy* and *Whitcomb* as tenants of the same." *Ludington*, by his answer, denied that he made the request alleged, or that said repairs were made for him jointly with the other defendants or otherwise. *Whitcomb* answered denying all the material allegations of the complaint, and filed an affidavit denying the alleged partnership between himself and *Tracy*. *Tracy* did not answer.

On the trial, after the plaintiff rested, and the court had refused a motion for a nonsuit, the defendants *Ludington* and *Whitcomb* introduced in evidence, among other things, an agreement in writing between the three defendants above named, executed January 28th, 1861, the substance of which, so far as it bears upon the question of their joint liability, is stated in the opinion of the court. Numerous exceptions were taken to the rulings of the circuit judge upon the admission of testimony, and his instructions to the jury ; but these became immaterial. Verdict and judgment for the plaintiff against all the defendants. *Ludington* and *Whitcomb* appealed.

*John J. McClellan*, for appellants.

*E. H. Ellis*, for respondent.

*By the Court,* COLE, J. Looking at the particular terms and conditions of the contract offered in evidence, we are clearly of the opinion that they show *James Ludington, Whitcomb* and *Tracy* to have been partners in fitting up the mill, and in manufacturing lumber, while it was in force. If this view of the effect of that agreement be correct, as a matter of course they were jointly liable for the expense of the repairs.

The agreement contains many provisions which have no special bearing upon the question whether a partnership business was created. Only those clauses, therefore, will be noticed, which have a bearing upon that point.

In the first clause of the agreement, *Ludington* agrees to and does lease *Whitcomb* and *Tracy* a steam saw-mill and boarding house in the village of Oconto, for the term of eleven months. They agree to erect in and put upon the mill certain improvements and repairs therein mentioned, and to run the mill with due diligence for the next ensuing season. *Ludington* agrees to advance one thousand dollars at his own expense for making the improvements and repairs specified, and to bear one third of whatever expense might be incurred over and above that sum in making them. Then provisions are made for stocking the mill with logs. The lumber manufactured was to be shipped to Chicago, to some person whom *Ludington* might designate, to be sold. The proceeds of the sale, after paying the freight on the lumber, were to be applied as follows: The sum of seventy-five cents per thousand feet, for every thousand manufactured, was to be paid *Ludington* for the rent of the mill. The sum of one dollar and seventy-five cents for every thousand feet was to be paid *Whitcomb* and *Tracy* as expenses of manufacturing the said lumber. The residue was to be applied in payment of whatever advances *Ludington* might make *Whitcomb* on logs for stocking the mill, and ten per cent. interest, and after allowing *Whitcomb* three dollars per thousand feet for all logs furnished and sawed by him into lumber at the mill during the continuance of the lease, then

one fourth of the net proceeds of the business was to be paid *Ludington.*

Now in regard to fitting up the mill it will be seen that *Ludington* was to participate in and bear one third of the expense over and above the thousand dollars. which he individually paid for that purpose. The repairs were to be made under the direction of *Whitcomb* and *Tracy,* who contributed their labor and skill and paid two thirds of the excess. The improvements were doubtless considered to be valuable and permanent, and as *Ludington* owned the mill he was willing to defray a portion of the expense out of his own funds. So if the proposed improvements should cost four thousand dollars, *Whitcomb* and *Tracy* would make them and and pay one half of the expense, and *Ludington* would meet the other half.

Then in reference to the lumber manufactured, *Ludington* was directly interested in that, and made ample provision for keeping it under his control. It was to be shipped to his agents ; sold by them, and the proceeds of the sales applied as above stated. *Ludington* was to be paid a certain sum per thousand for the use and occupation of the mill. *Whitcomb* and *Tracy* were to be paid a certain sum as compensation for manufacturing the lumber. The logs to stock the mill were then to be paid for. And then *Ludington* was to be paid one fourth of the net proceeds of the business. This agreement would seem to contain all the elements of a partnership in respect to fitting up the mill and in manufacturing the lumber. There is a clear agreement to participate in the profit and loss of the business. *Ludington* contributed capital, and the other parties labor and skill. They were jointly interested in the lumber manufactured. And it was doubtless sold on their joint account. After deducting out of the proceeds of the sales the freight, the rent, and a certain amount to pay for manufacturing the lumber, then the net proceeds of the business were to be divided as therein agreed. As it seems to us, this is but a stipulation to share in the profit and loss of a certain

business, and the parties were jointly liable for the expense of fitting up the mill.

We are aware that there is a class of cases which hold that a mere participation in the profits of a concern does not necessarily create a partnership. It is considered a stipulation for compensation for labor or services in proportion to a given quantum of the profits. It would be idle to go over the cases where this question has been discussed, and examine the nice distinctions which may be found in the books. They will be found in the notes to Collyer on Partnership, book 1, chap. 1. But we do not think this case falls within the principle of those decisions. It cannot be said here that *Ludington* had no interest in the lumber manufactured, but was to be compensated for services rendered by him by receiving a share of the profits of the business in which he was employed. He was not an agent or person working for the concern. He was the party principally interested in the business, especially in the repairs and improvements on the mill.

This action was brought to enforce a mechanic's lien and to recover for work performed and materials furnished in repairing the mill. The defense on the part of *Ludington* was, that he was not liable for these repairs. There was testimony offered tending to show that he employed the plaintiff to make the repairs. And various exceptions were taken to the rulings of the circuit court on the admission of testimony, to its refusal to grant a nonsuit, and to instructions given the jury. But all these exceptions become immaterial in the view we have expressed of the terms and effect of the written contract. They will not therefore be more particularly considered.

The judgment of the circuit court is affirmed.