## SUPREME COURT.

GIBSON, and others agt. STONE, and others.

A *promise* by the defendants to hold the proceeds of certain goods for the benefit of the plaintiffs, does not give the plaintiffs a specific *lien* on the goods themselves. And if the defendants, instead of selling the goods for cash and remitting the proceeds to the plaintiffs, appropriated them to the payment of their debts, the plaintiffs would have no more right to follow them into the possession of the creditors, than they would have to follow the proceeds in case the defendants sold the goods for cash and appropriated the money to the payment of the same debts. In either case it is alike merely a violation of a promise, for which they are personally responsible to the plaintiffs. ·

In order to constitute an *equitable assignment* of the goods to the plaintiffs, they must show an *intent* on the part of the defendants to *surrender all control* over the goods.

Where a *partner* having disposed of his share of the good will of the establishment, the *new firm* agree to allow him half yearly, one per cent upon the gross sales of the firm, this per centage does not constitute him a member of the new firm.

*New York General Term, February,* 1865.
*Before* INGRAHAM, *P. J.,* CLERKE *and* SUTHERLAND, *Justices.*
APPEAL from a judgment at special term.

· C. BAINBRIDGE SMITH, *for plaintiffs.*
MARTIN & SMITHS, *for defendants.*

By the court, CLERKE, J.   I concur with the referee in the opinion, that the three letters of December 29, 1860, January 11 and January 29, 1861, did not create a specific lien upon the goods mentioned in these letters.   The first letter states that the New York house should hold the proceeds of the sales of certain goods for the plaintiffs' account, as security for the payment of their acceptances of Messrs. James Black & Co.'s drafts for £5,000 each, drawn as an advance against the above-mentioned shipments.   The second letter of January 11, 1861, written by the plaintiffs to Messrs. Stone & Co., of New York, stating that they handed the latter the two acceptances for £5,000 each, as advances on the goods, and which, according to an arrange-

ment with the house of Stone & Co., in Manchester, were to be held in trust for the payment of the said two acceptances.

The third letter, dated 29th January, 1861, written by Stone & Co., of New York, to the plaintiffs, acknowledges the receipt of the letter of the 11th, which they say advises them of the acceptances, and indicates the goods to be held in trust for the payment of the acceptances. Taking these letters together, they simply amount to a promise, on the part of Stone & Co., to hold the proceeds of the goods for the benefit of the plaintiffs. It gives them no specific lien on the goods themselves, and if Stone & Co., instead of selling the goods for cash and remitting the proceeds to the plaintiffs, appropriated them to the payment of their debts, the plaintiffs have no more right to follow them into the possession of the creditors, than they would have to follow the proceeds, in case Stone & Co. sold the goods for cash and appropriated the money to the payment of the same debts. In either case it is alike merely a violation of a promise, for which they are personally responsible to the plaintiffs.

No intent is shown on the part of Stone & Co. to surrender all control over the goods; and this, according to all the authorities is necessary, in order to constitute an equitable assignment. All that Stone & Co. have said in the letters of 29th December, 1860, and of 29th January, 1861, amounts, I repeat, only to a promise to hold the goods in trust for the benefit of the plaintiffs, and to pay the proceeds to them, giving to the plaintiffs no equitable assignment, and still more clearly no pledge or mortgage. Stone & Co. retained throughout complete control over the goods. I also am decidedly of opinion that the referee correctly found that Henry A. Stone was not a partner with Stone & Co. As a creditor for the loan of $100,000 he received seven per cent. as a previous member of the firm. Having disposed of his share of the good-will of the

establishment, the new firm agreed to allow him, half-yearly, one per cent. upon the gross sales of the firm, precisely as they might have allowed any agent for procuring customers a similar percentage. In this agreement they expressly declare that Henry A. Stone has no interest in the commission, guarantee or profit and loss, and that he is in no wise a partner or to be allowed to have any part or control in the business of the house.

The judgment should be affirmed with costs.