# Wheeling.

CHAPLINE, LEWIS & CO. *vs.* CONANT AND WHEAT.

| 3 | 507 |
|---|---|
| 48 | 664 |
| 3 | 507 |
| 58 | 635 |
| 58 | 644 |

January Term, 1869.

1. An agreement by which there is a mere payment, or promise to pay, out of the profits of an enterprise, a sum of money as a specific proportion of the profits, does not necessarily constitute the payee a partner, and gives him no interest in the profits and no right to them, but only a personal claim for such share thereof after they are ascertained, and may be divided. The true test, to be determined by looking at the agreement and all its parts and provisions, as well as its general character, is did the supposed partner acquire by his bargain, any property in, or control over, or specific lien to, the profits while they remained undivided, in preference to other creditors. If he did, he is liable to third persons; and if otherwise, not.

2. A case where an agreement is held not to constitute a partnership.

This case arose in Ohio county. The summons was brought to March rules, 1868. A trial was had in May following, and verdict and judgment for the defendants.

But one question required determination in this court, and that was, as to the alleged partnership of defendant James S. Wheat.

The opinion of the president contains an ample statement of the material facts.

*George B. Caldwell* for the plaintiffs in error.

Authorities to sustain first assignment of errors.

Robinson's Old Practice, vol. 1, p. 342; Parson's Mercantile Law, pages 166 and 167; 5 C. B., N. S., pages 138 and 145; Greenleaf's Evidence, vol. 2, page 393; James' Bankruptcy, pages 198 and 201.

Authorities to sustain second and third assignment of errors;

Robinson's Old Practice, vol. 1, page 342; Parson's on Contracts, vol. 1, page 102; Parsons on Partnership, pages 146 and notes, and 454 and notes; Hill on Trustees, pages 559 and 801, 379, 533; Gow on Partnership, pages 15 and 16; 9 C. B., N. S., page 99; 4 Maule & Selwyn, page 412; 4 Johnston's Chancery Reports, p. 627.

*James S. Wheat* for the defendants in error.

The errors assigned are, the refusal of the circuit court to give each of the two instructions asked for by the plaintiffs, and the giving of the instruction at the instance of the defendants.

The first instruction assumes that Wheat was a dormant partner, and asks that he be held liable as a partner, if he furnished part of the capital, and was to participate in the profits or losses.

This instruction does not state the law, even had the evidence justified the court in giving the correct rule in such case.

The participation in profits, thus broadly and generally stated, never has been the test of liability as a partner.

The instruction as asked by the plaintiffs is not the law of this case and was only calculated to mislead the jury.

As to the second instruction, it assumes that the defendant Wheat had undertaken to trade with the trust funds by him held in trust, and that he had made contracts. There was no evidence of either, excepting so far as the written agreement may be construed as establishing them.

The defendant Wheat denying the partnership, said, that he had placed several thousands of dollars in the business, as agreed to be done in said articles of agreement, and under the conditions stated therein out of the funds, &c.

This question of partnership, or rather Wheat's liability as a partner, either with Henry Conant or with Conant & Edwards, depends upon the construction and legal effect of this agreement. It was a private paper.

Defendant Wheat had never been held out to the world as a partner, either by himself or others; nor had he taken

any part in the management of the business; neither had he the right to interfere in any manner whatsoever. He had no right to any participation in the profits of the business as they accrued, but could only claim the one moiety after the payment of all expenses and charges of any and every kind. Story on Partnership, sections 36 and 38; section 70. Parsons on Partnership, pp. 70 and 71, note; Id. 86, note; *Berthold* vs. *Goldsmith*, 24 Howard, 536–541; *Holmes et al.* vs. *Old Colony R. R. Corporation*, 5 Gray, 58; *Bowyer* vs. *Anderson*, 2 Leigh, 550.

There is no evidence of the consideration of these drafts or of the amount upon which they were drawn, or of the particular business in which the debt was contracted.    *U. S. Bank* vs. *Binney and others*, 5 Mason, 176.    [See opinion of Judge Story at page 182 *et seq.*] This case was carried to the supreme court and the judgment affirmed.    5 Peters, 539.    [See the dissenting opinion of Justice Baldwin, p. 567.]

BROWN, President.    This is an action of debt against Conant and Wheat on two bills of exchange, drawn by the plaintiffs and accepted by Edwards and Conant.    Conant and Wheat are sued as partners, under the style of Conant & Wheat.

The defendants pleaded non assumpsit, upon which plea there was issue, and the defendant Wheat also filed with his plea an affidavit denying the alleged partnership, thus putting the plaintiffs on the proof of the partnership as alleged.

Wheat was examined as a witness for the plaintiffs on the trial, and testified that he had never taken any share in the conduct or control of the business of the firm of Edwards & Conant; that he had never, at any time, been a partner with Henry Conant or with any one else in the firm of Edwards & Conant, and that he was not now a partner in said firm. At the plaintiff's request, said James S. Wheat produced an article of agreement, which was put in evidence by the plaintiffs, in the following words and figures, to wit:

" Mem. of an agreement made and entered into this 7th

day of December, in the year 1865, by and between Henry Conant, Michael Edwards, Jr., and James S. Wheat, trustee for Mrs. Mary Edwards, the wife of said Michael Edwards, Jr., all of the city of Wheeling and State of West Virginia.

"Whereas, the said Henry Conant and James S. Wheat, as such trustee, on the 28th day of March, 1865, at a public auction held at the front door of the court-house for Ohio county, by Daniel Lamb and S. Brady, commissioners, purchased the lots Nos. 3 and 7, in square No. 1, in the city of Wheeling, and parts of lots No. 7 and 8 in the same square, whereon is erected the hotel known as the Sprigg House, of which they are the owners as tenants in common and not as joint tenants, and have in like manner purchased the unexpired term of a lease on said premises held by Thomas Brues, together with a portion of the furniture in said house heretofore owned by said Brues; and have further agreed to purchase, in like manner, the furniture and other things necessary for the said hotel, and to repair, refit and equip the said hotel in a suitable and proper manner at the joint and equal expense, costs and charges of the said Henry Conant and James S. Wheat, as such trustee.

"Now, it is agreed between Henry Conant and Michael Edwards, to form a co-partnership for the purpose of keeping the said hotel, upon the following terms, that is to say:

"1st. The said business shall be conducted under the firm name and style of 'Edwards & Conant.'

"2d. Each of said partners shall devote his whole time, with his utmost skill, to the business of the firm, excepting that Henry Conant may, from time to time, pursue his business on the river as a pilot, with the consent of his copartner.

"3d. Neither partner shall sign the name of the firm to any note, bill or other writing, excepting in the regular and ordinary course of the business of the said firm.

"4th. The losses of the said business shall be paid equally by the said Henry Conant and the said James S. Wheat, as such trustee, and during the continuance of the said business,

and until the whole of the debts and liabilities therein contracted and incurred shall have been fully paid off and discharged, the said real estate, with its buildings and appurtenances, shall be taken and held, together with the furniture and fittings in said hotel, as liable for the payment and satisfaction thereof. The profits of said business, being the balance of the gross receipts after the payment of all expenses, including taxes, repairs and premiums for insurance upon the said real estate, and all other proper and legitimate charges, shall be divided equally between the said Henry Conant and the said James S. Wheat, as such trustee.

"5th. The said Michael Edwards, Jr., shall not be held liable as a partner by either the said Conant or the said Wheat, as such trustee, for the payment of any loss whatever, nor shall the said Edwards be entitled to any share or portion of the profits of the said business, either directly or indirectly.

"6th. Proper books of account shall be kept, in which shall be fairly and correctly entered all the transactions of said business, at all times, showing the true state and condition thereof. The said books shall be at all times open to the inspection of the said James S. Wheat, as such trustee, and the said Henry Conant shall, from time to time, pay to the said James S. Wheat the one moiety of the net profits of the said business, to be by him received and held as trustee for the sole and separate use of Mrs. Mary Edwards, the wife of Michael Edwards, Jr., freed and discharged from all interest or contract of her said husband.

"Witness the following signatures:

"H. CONANT,
"MICHAEL EDWARDS, JR.,
"JAMES S. WHEAT."

It was testified by said witness that, in pursuance of said agreement, he had, as trustee for Mrs. Mary Edwards, placed several thousand dollars in business, as agreed to be done by him in said article of agreement, and under the conditions stated therein, out of the funds, &c., held in

trust by him for Mrs. Mary Edwards. The plaintiff also put in evidence two certain bills of exchange, in the words and figures following, to wit:

"($219)          PHILADELPHIA, Sept. 17th, 1867.

"Four months after date, pay to the order of ourselves two hundred and nineteen dollars, value received, and charge the same to account of

"CHAPLINE, LEWIS & CO.

"To Edwards & Conant, Sprigg House, Wheeling, West Virginia.                (*Edwards & Conant.*)"

[10 cents U. S. stamp.]

ENDORSED.—"Chapline, Lewis & Co., pay to the order of George Adams, cashier, for remittance," which was duly protested.

"($125.35)          PHILADELPHIA, Nov. 2d, 1867.

"Four months after date pay to the order of ourselves one hundred and twenty-five dollars and thirty-five cents, value received, and charge the same to the account of

"CHAPLINE, LEWIS & CO.

"To Edwards & Conant, Wheeling, West Virginia.

(*Edwards & Conant, Nov. 21st, 1867.*)"

[10 cents U. S. Int. Revenue stamp.]

ENDORSED.—"Chapline, Lewis & Co.," (with protest as hereinbefore set forth.)

The witness, James S. Wheat, further stated that the acceptance of said bills of exchange are in the handwriting of Michael Edwards. This statement was not made in response to any question of the plaintiffs.

The plaintiffs, after the argument of the case by counsel, moved the court to instruct the jury as follows, to wit:

"The court is asked to instruct the jury that it is the law that a dormant partner who takes no part in the conduct of the business is liable as a partner if he furnished part of the capital, and is to participate in the profits or losses. And, secondly, that a trustee who undertakes to trade with the trust funds for the benefit of those for whom the funds are held in trust, is personally liable on all contracts he makes in such trade a partner, or individually; which in-

structions the court refused to give to the jury, and thereupon said ruling was excepted to by the plaintiffs.

On motion of the defendants, the court instructed the jury as follows, to wit:

"The court is of opinion, and so instructs you, that said agreement does not create a partnership between Henry Conant and James S. Wheat, under the firm name of Edwards & Conant." To which last mentioned ruling of the court the plaintiffs also excepted.

The important question to be determined is, whether, upon these facts, the trustee, Wheat, was a partner of the firm, as alleged.

The evidence shows an express partnership between Conant and Edwards, for the purpose and business of keeping a hotel. It further shows that Conant, and Wheat as trustee of Mrs. Edwards, owned the hotel and furniture thus to be kept, which they, the said trustee and Conant, were to repair, refit and equip, and furnish in a proper and suitable manner, at their joint and equal cost.

The partnership business was to be, and was, in fact, conducted under the firm name of Edwards and Conant.

The compensation of the said trustee, somewhat in the nature of rent for his half of the hotel and furniture used by the firm of Edwards and Conant, was to be the balance of the gross receipts from the business after the payment of all expenses, including taxes, repairs and premiums for insurance upon the said real estate, and all other proper and legitimate charges.

It was further provided, that the profits of said business, being the balance of the gross receipts after the payment of all expenses, including taxes, repairs and premiums for insurance upon the said real estate, and all other proper and legitimate charges, shall be equally divided between the said Conant and the said Wheat, as such trustee. This would seem to be in compensation in the nature of rents, issues and profits for the use of the hotel and appurtenances in which the business of the firm was to be conducted.

It is apparent that Conant was a man of means and it is equally inferable that Edwards was not.

As Conant, therefore, would be liable *in solido* for the debts of the firm of Conant and Edwards, it is natural enough that he should have required that Wheat, as trustee, should be bound to pay one-half of the losses, since he was to have the gross profits, after deducting certain costs, &c., equally divided between Conant and the said trustee. This provision is inconsistent with the relation of partner to the firm, because by the provision Wheat is only to be liable to pay one-half the loss.    If a partner he would have been liable *in solido*, as to third parties, and as to a third part only *inter se*.    And as the compensation, in the nature of rents, for his half of the joint property used, was to be one-half, that is to say, the said Edwards' half of the profits, and after deducting the costs specified, after the same should be ascertained and divided, it was provided, for the trustee's security, that the said Edwards should not be entitled to the same, that is the same should not be paid over by Conant to him, but to the said trustee.

It is claimed, that because the agreement secures to the trustee, Wheat, the right to inspect the books of the firm of Edwards, and Conant and require an account, that that is a test of partnership.    Undoubtedly every partner has a right to an account of the profits; but the converse is not true, that every one who has such a right is a partner.    There are many ways in which a man may represent another, and in that right be entitled to an account, without being liable as a partner.    Parsons on Part., 92.

Unless the purport of an agreement be clearly contrary to the declared intention of the parties, the declared intention should be regarded in giving construction to the agreement.    Parsons on Part., 82.    Now the evidence here shows that it was not the intention of Wheat to become a partner, nor of any of the firm that he should, nor was it the understanding of any of them that he was such, nor did he act or hold himself out as such.

But it is urged for the plaintiff that inasmuch as the trus-

tee, Wheat, was to participate in the profits he was a partner, and the rule laid down in the case of *Waugh* vs. *Carver* is relied on in support of the position.

It cannot be overlooked that the rule as there laid down has been seriously questioned in the latitude of its expression, as broader than the point actually decided. And it is equally certain that the current of modern authorities, while adhering to the principle of that case, have greatly restrained its operation and defined more clearly and precisely the ground on which it rests. The whole subject is considered, and the authorities, English and American, reviewed in Parsons on Partnership.

The principles of the law of partnership lead to the conclusion that, if a trader makes an arrangement in regard to a commercial business with another, by reason of which that other becomes interested as owner precisely as the first is interested as owner in the resulting profits, whatever be their respective proportions, while they are undivided and remain as profits, these two are certainly partners. And the same principles lead us directly to the other conclusion that a mere payment, or promise to pay, out of the profits a sum of money as a specific proportion of the profits does not necessarily constitute the payee a partner, and gives him no interest in the profits, and no right to the profits, but only a personal claim for such share of the profits, after they are ascertained, and may be divided.

"Our conclusion is," says the learned author, "that the question of interest in the profits' as such (by which we mean the profits before they are ascertained and divided) is always to be inquired into. The words which the parties use and all of them and all the parts and provisions of their agreement, as well as its general character and their relation to each other are to be looked at, and if the whole evidence leads to the conclusion that it was not the intention of the parties that the receiver should acquire any interest in, or control over, the business, or in the profits as they accrue, and before they are ascertained and divided, but only after they are ascertained, to find in them the fund and in

their amount the measure of his payment, he is no partner, nor liable as such. And the true test is, did the supposed partner acquire by his bargain any property in, or control over, the profits while they remained undivided. If so he is liable to third persons; and otherwise, not."

This subject is certainly one of the most interesting, and perhaps one of the most difficult, in the whole law of partnership. The authorities are in no inconsiderable conflict. Still the tendency of the cases, and especially of the later and better considered ones, we believe, will be found on the whole in favor of the doctrine as restricted and stated above.

We think the error in stating the rule in its amplitude lies not in declaring that "a specific interest in profits as profits" makes one a partner as to third persons, but in assuming that a stipulation for a certain share of the profits necessarily give such specific interest, or in other words an ownership in the profits, before and as they accrue, and in contradistinction to the right to have a certain or uncertain amount paid out of the profits after they had been ascertained and divided. And this distinction is sustained by numerous decisions. Thus it has been uniformly held, both in this country, as in England, that mariners who receive for their wages a share in the profits of a voyage are not thereby made partners, either as to rights or liabilities. *Rice* vs. *Austin*, 17 Mass., 197; *Grozier* vs. *Atwood*, 4 Pick., 234; *Coffin* vs. *Jenkins*, 3 Story, 108; *The Crusader Ware*, 438; *Reed* vs. *Hussey*, 1 Blatch and Howl Adm., 529; Pars. on Part., 81, note L.

The principle governing the courts in these agreements with sailors is, that all the circumstances being considered, the conclusion is deduced that the parties never intended to give, nor did give, to the mariners the interest as owners in the undivided profits. So in *Baxter* vs. *Redman*, 3 Pick., 435, it was held, "that although the officers and seamen respectively were to receive a share of the net proceeds of the oil obtained in a whaling expedition for their services, yet they were not partners, nor part owners of the oil with the ship owners; but, on the contrary, the oil before division

was the property of the ship owners, and being theirs in the first instance remained so until some settlement and adjustment."

In the case of *Holmes* vs. *The Old Colony R. R. Co.*, 5 Gray, 58, The Old Colony R. R. Co. leased to Parker & Tribon a hotel and was to receive for the use of the premises "in addition to the sum of 500 dollars for the use of the furniture, one-half of the net proceeds arising from keeping the house as a hotel." The court said, "whatever doubts may formerly have existed as to the effect of an arrangement like that made in the present case entitling the lessee to receive as compensation for the use of his property or capital stock, one moiety of the net proceeds arising from the business transacted, that question seems now fully settled at least in this commonwealth. It is no longer true that receiving one-half of the profits, or one-half of the net profits, arising from articles manufactured and sold, or resulting from business in which one furnishes the stock in trade and another performs the labor, necessarily creates a partnership. It is always competent to look at the particular circumstances of the case and ascertain thereby whether it may be a mere compensation to a party for his labor or services, or for furnishing the raw materials, or a mill privilege, or a factory, from which the other is to earn profits. Story on Part., sec 36, Pars. on Part., 84, note.

The question was fully considered in the case of *Denny* vs. *Cobat*, 6 Met., 82, and held that where a party is to receive a compensation for his labor in proportion to the profits of the business without having any specific lien on such profits to the exclusion of other creditors, there seems to be no reason for holding him liable as a partner, even to third persons.

In *Bradley* vs. *White*, where the question arose upon an agreement that A. should furnish the goods for a store and pay all expenses, and B. should transact the business of the store and receive half the profits for so doing; it was held that this did not constitute B. a partner, and that he was not liable to a creditor who had furnished goods for such store.

Again, where it was stipulated that the owner of a vessel should receive a certain percentage on the profits of the voyage it was held that such an interest in the profits did not constitute a partnership. *Reynolds* vs. *Tappan*, 15 Mass. 373; *Cutter* vs. *Winsor*, 6 Pick.

In the case of *Bowyer* vs. *Anderson*, 2 Leigh, 550, the owner of a public ferry leased it to F. for two years, for 1,000 dollars paid, and if the net profits of the ferry did not yield F. 2,000 dollars within the two years, F. should hold over the term until the profits did yield the 2,000 dollars; but if the profits yielded more than the 2,000 dollars within the two years, the excess was to be equally divided between them, held not to constitute a partnership nor to render the owner liable to third parties for the lessee's negligence during the tenancy, although the owner was to participate in the profits in a certain contingency. In this case Judge Brooke said "it is not uncommon in farming leases that the rent is stipulated to be paid in a certain portion of the profits, yet no partnership is inferred from that circumstance."

So in the case of *Vanderbaugh* vs. *Hall*, 20 Wend., 70, where the question was whether a person with a salary of 300 dollars guaranteed to him and a right to one-third of the profits, if there were any, though he was not to be liable for losses, was a partner as to third persons, with the plaintiff; and it was held that he was not a partner and was a competent witness for him. See also *Fitch* vs. *Hall*, 25 Barb., 13; *Dunham* vs. *Rogers*, 1 Barb., 255; *Johnson* vs. *Miller*, 16 Ohio, 431; *Reed* vs. *Murphy*, 2 Green Ia., 574; *Hodges* vs. *Dawes*, 6 Ala., 215; *Scott* vs. *Campbell*, 30 Ala., 728; *Shropshire* vs. *Shepherd*, 3 Ala., 733; *Bartlett* vs. *Jones*, 2 Stropp, 471; *Brockway* vs. *Burnap*, 16 Barb., 310.

From this review of the leading cases and others we conclude that the rule of *Waugh* vs. *Carver* in the amplitude in which it has usually been stated in the *dicta* of many distinguished jurists to the effect that an indefinite participation in the profits makes one a partner as to third persons, because by such participation the fund on which creditors

rely is diminished, is not established, nor sustained, by the mass of either English or American authorities.    And the very recent decisions in England, both in the courts and House of Lords, *Wheatcroft* vs. *Hickman*, 9 C. B., N. S., (99.Eug. Com. L. R.), 47; S. C., 8 H. of L., cases 268 have gone, if we may judge from the note of them in the law reviews, even beyond the American courts in condemnation of the broad principle so early announced, and concur in giving to it a more restricted, rational and practical application to the business of the times.

We are constrained, therefore, notwithstanding the imposing and conflicting *dicta* apparently to the contrary to conclude that the cases show that there are but two grounds upon which a person can be made liable as a partner to third persons; and that if a man has not been held out as partner, he can be chargable as such only when he holds that relation to profits, which we believe to be the ultimate test of partnership, both *inter se* and as to third persons; that is, unless he has some ownership in or of the profits as they accrue and are not ascertained or divided into portions or dividends.

See also on this question *Gibson* vs. *Stone*, 43 Barb., 285; *Conklin* vs. *Barton, Ib.,* 435; *Smith ads. Parry,* 5 Dutch, 74; *Vorhees* vs. *Jones, Ib.,* 270; *Berthold* vs. *Goldsmith,* 24 How. (U. S.), 536; *Stevens* vs. *Faucet,* 24 Ill., 483; *Robins* vs. *Larwell,* 27 Ill., 365; *Fawcet* vs. *Osborn,* 32 *Ib.,* 411; *Macy* vs. *Combs,* 15 Ind., 469; *Reynolds* vs. *Hicks,* 19 *Ib..* 113; *Braley* vs. *Goddard,* 49 Me., 108; *Atherton* vs. *Tilton,* 44 N. H., 452; *Whitney* vs. *Luddington,* 17 Wis., 140; *U. S. Bank* vs. *Binney, et al.,* 5 Mason, 176, 182; *U. S. Bank* vs. *Binney et al.,* 5 Peters, 529; Story on Part., sections 36, 38, 70.

Apylying then the principles deduced from the cases thus considered, let us see if the case here wears the impress of a partnership, either *inter se,* or as to third persons?

And first, it was not the intention of the parties that the trustee, Wheat, should be a partner, nor liable as such, nor was he to have any part or lot in the management and con-

trol of the business of the partnership, nor did he, in fact, exercise or attempt to exercise any such control.

In the second place he was not held out as a partner.

. In the third place his participation in the profits was to be only after they were ascertained and apportioned and divided, when the portion so divided, which would have belonged to the partner Edwards was to be paid by the other partner Conant to the trustee Wheat, and not to Edwards in any event, and until such ascertained apportionment and division of the profits the said trustee had no specific interest, ownership of or lien upon the said profits as would prejudice or take precedence of other creditors of the firm of Edwards & Conant; and even then his participation was only to be in the balance after deducting taxes, repairs, insurance on the property and all other proper and legitimate charges.    Here there was no such participation in the profits, as profits, before ascertainment and division, but only in the profits if any that would have been apportionable to the partner Edwards (but who was not to receive them), after such ascertainment and division.

Considering then the words which the parties have used, and all of them, and all the parties and provisions of their agreement, as well as the general character and relation to each other, the true test is, did the supposed partner, Wheat, acquire by his bargain any property in, or control over, or specific lien upon the profits while they remained unascertained and undivided, in preference to other creditors? If so, he is liable to third persons; and otherwise, not. And so considering we are constrained to hold him not liable, neither *inter se* nor as respects third persons dealing with the partnership, since the facts of the case fail to constitute him a partner in any sense.

I think, therefore, that the court below committed no error in giving to the jury the instruction asked by the defendants, to the effect that the said agreement did not constitute the trustee, Wheat, a partner of the firm of Edwards & Conant.   Nor did the court err in refusing to give the two instructions asked by the plaintiffs, because though as abstract

propositions of law they were unexceptionable, yet as mere abstractions they were irrelevant and calculated to mislead the jury, since the inquiry was not whether a dormant partner was liable in the one case, or a trustee who trades with the trust fund is liable in the other, but whether the party in any character was a partner, either *inter se*, or as to third persons.

I am of opinion, therefore, to affirm the judgment, with costs and damages to the appellees.

The other judges concurred.

JUDGMENT AFFIRMED.