# CHARLESTON.

MURPHY *et al.* v. FAIRWEATHER *et al.*

Submitted March 5, 1912.    Decided February 11, 1913.

1. APPEAL AND ERROR—*Proceedings to Transfer Cause—Petition —Attorney's Certificate.*

    An appeal will not be dismissed as having been improvidently awarded for mere formal defects in the petition therefor or the attorney's certificate appended thereto. (p. 16).

2. SAME.

    Though the attorney's certificate is limited in terms to only one decree and misdescribes it, giving a wrong date, it will be taken as having been intended to cover all the assignments of error in the petition. (p. 16).

3. SAME—*Decisions     Reviewable—Amount     in     Controversy—
   Interest.*

   In the determination of the question of appellate jurisdiction
   of a decree for money, interest included therein is not to be
   excluded.   (p 16).

4. PARTNERSHIP—*Pleading—Bill.*

   A bill by a general creditor of a copartnership, charging
   insolvency of the firm and a conspiracy on the part of the
   members to hinder, delay and defraud its creditors, partially
   executed by the absconding of one of the partners and the
   levying of an attachment on the partnership property by the
   other, denying his membership of the firm and claiming to
   be a creditor of the absconding partner, is good on demurrer.
   (p. 17).

5. FRAUDULENT CONVEYANCES—*Transactions Invalid—"Suit Com-
   menced."*

   The issuance and levying of the attachment, at the instance
   of the partner, uder such circumstances, is a "suit com-
   menced" within the meaning of section 1 of chapter 74 of
   the Code, and section 2 of chapter 133 of the Code confers
   equity jurisdiction in such cases.   (p. 17).

6. SAME—*Remedies of Creditor—Creditor's Suit.*

   By the commencement of a suit authorized by section 2
   of chapter 133 of the Code, a creditor obtains a lien upon
   the property proceeded against and may have   a   receiver
   appointed if there is danger   of   loss   or   misappropriation
   thereof.   (p. 19).

7. PARTNERSHIP—*Creation of Relation—Nature of Contract.*

   A contract between the owner   of   timber   and   another
   person, under which the former is to furnish the timber for
   manufacture and sell the product and collect the proceeds,
   and the latter is to cut, log and manufacture the timber and
   receive two-thirds of the proceeds of the lumber, creates a
   co-partnership between them.   (p. 19).

8. COSTS—*Security for Payment—Time for Motion.*

   A motion made at the hearing of a cause to require a non-
   resident plaintiff to give security for costs comes too late and
   is properly overruled.   (p. 20).

Appeal from Circuit Court, Randolph County.

Bill in equity by John T. Murphy and another against Alfred
Fairweather, Sr., and another.   From a decree for plaintiffs,
defendants appeal.

*Affirmed.*

*C. W. Maxwell* and *W. B. & E. L. Maxwell,* for appellants.
*J. P. Scott* and *Cunningham & Stallings,* for appellees.

POFFENBARGER, PRESIDENT:

Two grounds for the dismissal of this appeal as having been improvidently awarded are set forth in the brief. The first of these is alleged insufficiency of the petition in this, that it does not identify any particular decree as being erroneous and ask relief therefrom. Though it contains many misdescriptions and erroneous references to the decrees, it substantially complains of all of them, saying the case was not one proper for the appointment of a receiver; and it was error to overrule the demurrer to the bill, to hold the defendants were partners, to confirm the commissioner's report and to overrule a motion to require the plaintiffs to give security for costs. It concludes with a prayer for an appeal and *supersedeas* from the "said decrees to the end that the same may be reviewed, reversed, annulled and set aside." The certificate of the attorney appended to the petition referred to but one decree and misdescribed it, giving a date not applicable to any of the decrees. However, this certificate is formal and may be taken as intended to sustain all the assignments of error in the petition. As there is a petition and also a certificate, we are of the opinion that the statute has been substantially complied with. The other ground is alleged insufficiency of the amount in controversy. There were three plaintiffs to whom the sums of $107.81, $314.03, and $37.12, respectively, were decreed. They are all separate and distinct demands and cannot be united for the purpose of jurisdiction. The person to whom the largest sum is decreed does not unite in the motion. The decree for $107.81 is appealable, although $8.63 thereof is designated in the decree as interest, for interest, up to the date of the decree complained of, may be added for the purpose of jurisdiction. *Arnold* v. *County Court,* 38 W. Va. 142; *Stratton* v. *Insurance Society,* 6 Rand. 22; *Herring* v. *Railroad Co.,* 101 Va. 778. Here the interest had actually been included in the decree. *Alger's* decree for $37.12 is too small to confer appellate jurisdiction.

As to it, the motion must be sustained. As to Murphy, whose decree is for $107.81, it will be overruled.

The two vital questions in the case are, (1) whether there is jurisdiction in equity; and (2) whether there was ground for the appointment of a receiver. All the plaintiffs are general creditors, having no liens of any sort prior to the filing of their bill, and charge a partnership relation between the two defendants, Hart and Fairweather. Having charged this relation for the purpose of cutting and manufacturing into lumber the timber on a certain tract of land, the bill charges that Hart, denying the relation, and claiming to be a creditor of Fairweather, sued out an attachment and levied it upon the partnership property, and, without having proceeded to judgment or procured an order of sale in the attachment suit, was proceeding to sell and dispose of the lumber and other timber in pursuance of a conspiracy between him and his partner to defraud their creditors, and especially the plaintiffs. These allegations constitute the substance of the bill, though other matters are set up which are deemed immaterial. Upon them is predicated a prayer for the appointment of a receiver, sale of the partnership property, a decree for the debt of the plaintiff and satisfaction thereof out of the proceeds of the sale and for general relief.

The jurisdictional question has been so far simplified by our statute as to relieve us from inquiry as to the application of general principles of equity jurisdiction, dwelt upon in the argument. If the facts averred in the bill, taken as true on the demurrer, constitute a voluntary or fraudulent gift, conveyance, assignment, or transfer of, or charge upon, the estate of the debtors, considered as a firm, section 2 of chapter 133 of the Code confers equity jurisdiction to set it aside and subject the property to the payment of the debts of creditors. Before the passage of this statute, a creditor of a fraudulent debtor was compelled to exhaust his remedy at law by reducing his claim to judgment and taking execution thereon. Now, by virtue of the statute, he may sue in equity as a general creditor for relief from such fraud and has a lien upon the property from the date of the commencement of the suit. *Manufacturing Co.* v. *Chewning,* 52 W. Va.

523; *Foley* v. *Ruley,* 50 W. Va. 158; *Clark* v. *Figgins,* 31 W. Va. 156; *Wallace* v. *Treakle,* 27 Grat. 479. The broad terms of this statute were evidently intended by the legislature to include relief from all the transactions declared by section 1 of chapter 74 to be void. They embrace suits commenced, decrees, judgments and executions suffered and obtained with intent to delay, hinder or defraud creditors. According to the allegations of the bill, the debtor here was the firm of Hart and Fairweather, or the Valley Lumber Company, and the creditor's right was to go against the firm assets. But for the alleged wrongful act of the members of this firm, each creditor might have sued at law, obtained an execution and levied upon its property. To obstruct and impede this right, the bill says one of the partners absconded and left the state and the other denied his membership in the firm, claimed to be a creditor, disclaimed title to any part of the property, sued out an attachment and had the same levied on the property. This was a "suit commenced" for the purpose of hindering and delaying creditors, its purpose being to withdraw the firm assets from the reach of creditors, and dispose of the same under color of a legal proceeding, creating an apparent lien upon the property. On the face of the paper Hart, having no debt, not being a creditor, but, on the contrary, being one of the debtors himself and a member of the firm, made himself apparently a creditor and threw around him as such this legal form or coloring. By his disavowal of membership in the firm, he made a gift of his interest therein, to his copartner, conclusively fraudulent as to general creditors. No doubt the plaintiff had a remedy by attachment and could by proper proceedings have established priority of a debt or lien under it. But this statute gives concurrent jurisdiction in equity in all cases falling under the statute against fraudulent conveyances. We do not think it confers equity jurisdiction in every case of fraud on the part of a debtor, but it does in all those instances contemplated by section 1 of chapter 74 of the Code. The protection of these statutes extends to the rights of the creditors respecting personal property as well as real estate. *Clark* v. *Figgins,* 31 W. Va. 156. The attachment, levy and lien thereon operated as a subterfuge

for the protection of Hart very similar to that of a confessed judgment or decree, or a writing executed with fraudulent intent. So we think the case falls within the principle of those enumerated in section 1 of chapter 74 of the Code. Hence the demurrer to the bill was properly overruled.

As the attacking creditor under these statutes has a lien for his debt, he has, after the commencement of his suit, the requisite status of an applicant for the appointment of a receiver in case of the misappropriation or loss of property upon which his lien is. Without the statute, equity might not have jurisdiction, and there would be no basis for a receivership.

The answer denies the charge of insolvency and the partnership relation, admits the issuance and levy of the attachment at Hart's instance, and prays for the discharge of the receiver and dismissal of the bill. On the issue as to the existence of a partnership, a written contract between F. F. Hart, O. M. Fairweather and A. Fairweather was introduced. But it was shown that O. M. Fairweather, after the signing of the contract, withdrew and took no part in the operations under it. Having recited the ownership by Hart of the timber on a tract of land, the contract stipulated substantially as follows: Hart was to furnish the timber, load the lumber on cars, sell the same and collect all money arising from the sale thereof. Fairweather was to cut, manufacture and deliver the lumber in piles or at the railroad. Hart was to pay Fairweather two-thirds of the proceeds of the sale of lumber as fast as it was sold and the proceeds collected, and was to receive the sum of one dollar for loading the lumber, to be deducted before making the division. It is said the purpose of this contract was not to create a copartnership, but, on the contrary, to preclude an inference of that relation from the conduct of the parties in the enterprise in which they were about to engage. However, its character is to be tested, not by the motive, but by its provisions. It embodies a feature distinctive and characteristic of a copartnership as regards the rights of third persons. It divides the burden of losses and the benefit of profits between the parties. Instead of contributing money to the common fund for the execution of the enterprise, it provides for separate con-

tributions in the form of labor and property; but when it comes to the matter of profits, it expressly stipulates for a division thereof, in defined proportions. This division of profits, from time to time, included return of the contributions, but it carried profits also, and, if the allotted share of the proceeds of the lumber was less than the contributions in labor, money and materials, it imposed losses. Thus we find the essential characteristics of a copartnership in the terms of the contract. "The true test, to be determined by looking at the agreement and all its parts and provisions, as well as its general character, is, did the supposed partner acquire by his bargain, any property in, or control over, or specific lien to, the profits while they remained undivided, in preference to other creditors. If he did, he is liable to third persons; and if otherwise, not." *Chapline et al.* v. *Conant et al.,* 3 W. Va. 507. But this contract goes further, making each member bear his proportion of losses. In addition to the written contract, there is proof of numerous admissions of a copartnership on the part of the defendant Hart. Undoubtedly he permitted himself to be held out as a partner in connection with the lumber operations.

Though the bill alleges insolvency of the firm and also of the individual partners, it is not a necessary element in the charge of fraud. It is only a circumstance bearing upon the intent of the parties to the transaction. But, if it were a necessary allegation, the answer does not deny insolvency of the firm. It merely denied Hart's membership and insolvency on his part. The firm is in law an entity distinct from the individuals composing it. It may be wholly insolvent while the individuals are solvent. Bump Fraud. Convey., sec. 209; Wait Fraud. Convey., sec. 319b. The undenied allegation of firm insolvency is taken for true and the fact established for the purposes of the suit.

As the defendant Hart was shipping and selling the lumber under the cover of his attachment lien, with intent to defraud creditors, he was misappropriating the property and the appointment of a receiver was proper. Hence the court did not err in overruling the motion to discharge him.

The motion to require security for costs was not made until

the case was ready for submission.   All the proof had been taken
and the costs incurred.   Having waived, until that late hour,
any right to security for costs he may have had, Hart had no
just ground for complaint as to the ruling on his motion.   As the
statute allows sixty days in which to give security for costs, after
the motion has been made, to allow it to be made on the hear-
ing, when all costs have been incurred, and delay the decision,
during the period allowed in which to give security, would be a
perversion of the statute to a purpose for which it was never
intended.

For the reasons stated, the decree complained of will be
affirmed.

*Affirmed.*