# Richmond

## H. C. OUTLAW V. JOSEPH PEARCE.

November 25, 1940.

Record No. 2258.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Charles B. Godwin, Jr.*, for the plaintiff in error.

*James H. Corbitt*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Joseph Pearce, while riding in an automobile owned by his wife and driven by James P. Lumpkin, was injured in a collision between that car and another owned and operated by H. C. Outlaw. Pearce has recovered a verdict and judgment of $500 for damages for his injuries, which are here for review. For convenience the parties will be referred to as they appeared in the court below.

The notice of motion for judgment was filed on June 8, 1939, the case was tried on the following July 25 and 26, and the verdict was rendered on the last date. On August 10 the motion for a new trial, made immediately after the verdict had been rendered, came on to be argued. The defendant, for the first time, then suggested to the court that the plaintiff was a nonresident and moved that he be required to give "security for all costs and damages that may be awarded. to the defendant" under Code, section 3519, as amended by Acts 1938, ch. 113. The trial court overruled the motion and declined to require such security of the plaintiff at that "stage of the proceedings," to which ruling the defendant excepted.

The motion for a new trial was then argued, was overruled, and judgment was entered on the verdict.

The first assignment of error is to the action of the trial court in refusing to grant the motion requiring the plaintiff to give security for costs. It is argued that under the statute the plaintiff should have been required to give security for costs both in the lower court and in the appellate court, and that since this was not done the judgment should be reversed and the suit dismissed.

So much of Code, section 3519 (as amended by Acts 1938, ch. 113, p. 182), as is here material reads as follows:

*"Security for costs and damages; how required; when suit dismissed if not given; if given, to be by bond; remedy thereon.*—In any suit or action (except where such poor person is plaintiff) there may be a suggestion on the

record in court, or (if the case be at rules) on the rule docket, by a defendant, or any officer of the court, that the plaintiff is not a resident of this State, and that security is required of him. After sixty days from such suggestion, the suit or action shall, by order of the court, be dismissed, unless, before the dismission, the plaintiff be proved to be a resident of the State, or security be given before said court, or the clerk thereof, for the payment of the costs and damages in the court in which the suit or action is instituted which may be awarded to the defendant, and of the fees due, or to become due, in such suit or action to the officers of the court. * * * "

Even prior to the 1938 amendment to the statute this court held that it did not apply to costs in the appellate court. *Lambert* v. *Key,* 4 Hen. & M. (14 Va.) 484. See also, Burks' Pleading and Practice, 3d Ed., section 313, p. 587; *Bailey* v. *McCormick,* 22 W. Va. 95, 97.*

But any doubt about the matter was clearly removed by the 1938 amendment which expressly limited the application of the statute to the payment of costs and damages "in the court in which the suit or action is instituted."

█ Clearly, then, the trial court was right in not requiring the plaintiff to give security for costs in the appellate court.

Should the plaintiff have been required at that stage of the proceedings to give security for costs in the lower court? We think not.

█ Statutes of this character are common in most of the States. 14 Am. Jur., Costs, section 40, p. 26. Their manifest purpose is to insure to the defendant and to the officials of the court the payment of costs which may be awarded against a nonresident plaintiff against whom the court has no means of enforcing a collection.

---

• *NOTE.—The West Virginia statute has since been amended, making it applicable to costs "in the trial court and in all appellate courts." Michie's West Virginia Code 1937, section 5854.

In *Anderson* v. *Johnson*, 32 Gratt. (73 Va.)) 558, 574, this court held that where a motion is made by the defendant to require a nonresident plaintiff to give security for costs under this statute, and the same is ordered, the bill should be dismissed if the order is not complied with.

Notwithstanding the fact that such a statute is mandatory the authorities agree that the right of a defendant to require security for costs may be waived by his conduct in failing to promptly move for such security. 14 Am. Jur., Costs, section 43, p. 28; 20 C. J. S., Costs, section 135, p. 375.

Consequently it is generally held that a motion to require security for costs comes too late when it is made after the case is called for trial or after a verdict has been rendered, as in the instant case. 14 Am. Jur., Costs, section 43, pp. 28, 29; 20 C. J. S., Costs, section 135, p. 377; 8 A. L. R., p. 1533, note.

In *Murphy* v. *Fairweather*, 72 W. Va. 14, 77 S. E. 321, in which the court dealt with a statute almost identical in terms with ours, it was said (77 S. E., at page 323):

"The motion to require security for costs was not made until the case was ready for submission. All the proof had been taken and the costs incurred. Having waived, until that late hour, any right to security for costs he may have had, Hart has no just ground for complaint as to the ruling on his motion. As the statute allows sixty days in which to give security for costs after the motion has been made, to allow it to be made on the hearing, when all costs have been incurred, and delay the decision, during the period allowed in which to give security, would be a perversion of the statute to a purpose for which it was never intended."

This reasoning is quite applicable to the situation before us. Here the case had been on the docket for more than two months. It had been tried and all of the costs, except that of entering the final order, had been incurred. The court was then ready to render a final judgment.

To have granted the defendant's motion and to have required the nonresident plaintiff at that stage of the proceedings to give security for costs would have enabled the defendant to take advantage of his own tardiness and delay the entry of a final judgment against him for no good purpose.

The declared purpose of the statute is to insure the collection by the defendant of any costs which may be awarded to him. Having decided that the costs would be awarded to the plaintiff there was nothing to secure to the defendant.

Therefore, the trial court was right in overruling the defendant's motion to require the plaintiff to give security for costs at that stage of the proceeding.

We turn next to the merits. The collision occurred about nine o'clock at night on April 16, 1939, at the corner of Market and Clay streets, in the city of Suffolk. Each of these streets is about nineteen feet wide from curb to curb. Market street is an arterial street running east and west. Clay street runs north and south, and vehicles operating along it are required by appropriate traffic signs to come to a full stop before entering the intersection.

The testimony on behalf of the plaintiff shows that the car in which he was riding was being driven southwardly along Clay street. Before reaching the northern side of Market street, the driver, in obedience to the traffic signs, brought his vehicle to a complete stop. He looked both ways and saw no traffic coming. His view to the right was obstructed by trees and bushes at the northwestern corner of the two streets. Neither seeing nor hearing any vehicle approaching, the driver of the Pearce car put his vehicle in low gear and started across the intersection at a slow rate of speed. When the front of his car had gotten well into the intersection the driver of the Pearce car saw a car rapidly approaching on his right, bound eastwardly along Market street. This car turned out to be that of the defendant, Outlaw. When first

seen by the driver of the Pearce car it was about seventy-five feet west of the intersection. Thinking that he could clear the intersection before the other car arrived there, the driver of the Pearce car proceeded on his course across Market street. The Pearce car had almost cleared the intersection when it was struck on the right rear side by the Outlaw car, which was proceeding at a rapid rate of speed, which had not slowed down for the intersection, and which had not sounded its horn or given any indication of its approach.

The force of the collision drove the Pearce car across to the eastern side of Clay street, south of Market street, where it turned over with its left side against the eastern curb of Clay street. The Outlaw car came to a stop on Market street some fifty or seventy-five feet beyond the point of collision.

The evidence on behalf of the defendant is that the Outlaw car had stopped at the intersection some three hundred feet west of the point of the collision; that it then proceeded at a moderate rate of speed of twenty to twenty-five` miles per hour eastwardly along Market street; that when it was from twenty to twenty-five feet from the intersection the Pearce car came out of Clay street directly in front of the Outlaw car; and that the defendant blew his horn and applied his brakes but was unable in this situation to stop his car before the collision occurred.

There was also testimony for the defendant that as the driver of the Pearce car approached the intersection there were spaces between the bushes and trees on his right through which he could have observed the on-coming Outlaw car had he been keeping a proper lookout.

It thus appears, as is usual in cases of this character, that the testimony is highly conflicting. If the evidence on behalf of the plaintiff is to be believed, the collision was proximately due, in whole or in part, to the negligence of the defendant in that he was driving at an excessive rate of speed, failed to have his car under proper

control, failed to keep a proper lookout, and failed to yield the right of way to the Pearce car. Having accepted the plaintiff's theory of the cause of the collision, as detailed by his witnesses, the jury was warranted in finding a verdict in his favor unless the evidence disclosed that the plaintiff was guilty of contributory negligence, or unless the driver of the Pearce car was guilty of negligence which proximately caused or contributed to the accident and which was imputable to the plaintiff.

The principal assignment of error is that the court should have submitted to the jury by proper instructions, whether the plaintiff was guilty of contributory negligence, and whether the occupants of the Pearce car were engaged in a joint enterprise with the result that the negligence, if any, of the driver of that car was imputable to the plaintiff.

The plaintiff in error (the defendant below) insists that the court erred in giving to the jury four finding instructions, numbers 1, 2, 3 and 5, without qualifying each by telling the jury in appropriate language that the plaintiff was not entitled to recover if the jury found from the evidence (a) that the plaintiff was guilty of contributory negligence, or (b) that the parties were on a joint enterprise and the driver of the Pearce car was guilty of negligence which proximately caused or contributed to the accident.

The court declined to qualify in this manner any of the four instructions complained of. However, on its own motion, it gave "Instruction 6" which told the jury that if they found from the evidence that the parties were on a joint enterprise and that the driver of the Pearce car "was guilty of negligence that proximately contributed to the accident, then they cannot find a verdict for the plaintiff as directed in the instructions 1, 2, 3, 4 and 5. If on the other hand they should be of opinion from the evidence that there was not a joint enterprise between plaintiff, Joseph Pearce, and his wife,

then the said instructions 1, 2, 3, 4 and 5 should be considered as written, along with other instructions given in the case."

In another instruction given at the request of the defendant, the court instructed the jury in appropriate language that the plaintiff was not entitled to recover if the jury found from the evidence that he was guilty of contributory negligence.

The plaintiff in error, however, insists that the omission in the instructions complained of could not be cured in this manner.

There would be considerable merit to this contention if the record disclosed any evidence which would have warranted the jury in finding either that the plaintiff was guilty of contributory negligence or that he and the driver of the car were on a joint enterprise.

It is well settled under our practice that a finding instruction "must state a complete case and embrace all elements necessary to support a verdict." *Thomas* v. *Snow,* 162 Va. 654, 662, 174 S. E. 837, 840; *Mann* v. *W. C. Crenshaw & Co.,* 158 Va. 193, 224, 163 S. E. 375.

Consequently, we have repeatedly held that a finding instruction which ignores the defense of contributory negligence, where there is evidence of any, is erroneous. *West* v. *L. Bromm Baking Co.,* 166 Va. 530, 536, 186 S. E. 291, 294; *Norfolk Southern R. Co.* v. *Banks,* 141 Va. 715, 721, 126 S. E. 662; *Atlantic Coast Line R. Co.* v. *Caple's Adm'x,* 110 Va. 514, 518, 66 S. E. 855.

It is equally well settled that such error cannot be cured by merely giving another instruction properly dealing with the defense of contributory negligence. *Virginia & Southwestern Ry. Co.* v. *Skinner,* 117 Va. 851, 854, 86 S. E. 131; *Washington-Southern Ry. Co.* v. *Grimes' Adm'r,* 124 Va. 460, 463, 464, 98 S. E. 30.

The same is true of the defense of joint enterprise. While it is permissible under our practice to qualify a given instruction by a cross-reference to another, this should be done in a manner which will clearly

convey to the jury the force and effect of the qualification.

Here "Instruction 6" given by the court on joint enterprise told the jury that it should be read with instructions numbers 1, 2, 3 and 5. But there was no language or cross-reference in either of the last-named instructions to show that they were qualified by "Instruction 6." This was not, we think, a clear and sufficient indication of the qualification of these instructions and was likely to confuse the jury. See *West* v. *L. Bromm Baking Co., supra,* 166 Va., at page 536, 186 S. E. 291; *Gale* v. *Wilber,* 163 Va. 211, 221, 222, 175 S. E. 739.

However, in the record before us there is no evidence either that the plaintiff was guilty of contributory negligence or that he and the driver of the car were on a joint enterprise.

First, as to contributory negligence. At the time of the accident the plaintiff was sitting in the rear seat of the car which was owned by his wife and was being operated under her direction. Lumpkin, the driver of the car, had taken the wheel when the plaintiff and his companions left the house of a friend in Suffolk, less than a half block from the scene of the accident. There was nothing to indicate to the plaintiff that the car in which he was riding was being driven in a reckless or unlawful manner. The undisputed testimony is that when it reached the intersection, in obedience to the traffic signs, it came to a full stop, and that both the driver of the car and the plaintiff looked in the direction from which the Outlaw car came. However, from the place where the Pearce car came to a stop intervening obstructions prevented a view of the approaching Outlaw car. With no other car in view there was nothing to indicate to the plaintiff that Lumpkin was negligent in proceeding into the intersection. There was nothing the plaintiff could have done to have avoided the collision, and there was no evidence on which the jury could have found him guilty of contributory negligence.

Next, as to joint enterprise. The plaintiff and his wife live at Louisburg, North Carolina, some one hundred and forty miles from Suffolk. On the morning of April 16, 1939, Mrs. Pearce decided that she would take a trip to Norfolk to see the fleet which was then anchored in Hampton Roads. She owned an automobile which she had purchased with her own funds and which she frequently drove. She invited Lumpkin, who was driving the car at the time of the accident, the plaintiff, and the Misses Rouse, whose mother was then living at Suffolk, to go on the trip.

The party left Louisburg in the morning, had lunch on the way, and during the day went to Norfolk by the Norfolk-Portsmouth ferry. Mrs. Pearce paid for the gas and the ferriage on the trip. On their return from Norfolk they went through Suffolk and stopped at the house on Clay street where the mother of the Misses Rouse was living. Up to this point the car had been driven by the plaintiff at his wife's request. Upon leaving Mrs. Rouse's home, Mrs. Pearce asked Lumpkin to drive. Lumpkin was not familiar with Suffolk and Mrs. Pearce directed him to proceed southwardly along Clay street towards Market street. The collision occurred less than a block from where Lumpkin had taken the wheel.

In *Director General of Railroads* v. *Pence's Adm'x,* 135 Va. 329, 345, 116 S. E. 351, 356, we said:

"But the 'joint enterprise' which will render the contributory negligence of a driver imputable to a person riding with him must invest such person with some voice in the control and direction of the vehicle. The rule is founded upon the doctrine of principal and agent. The passenger must be so related to the driver as that the maxim *'Qui facit per alium facit per se'* is applicable."

See also, *Carroll* v. *Hutchinson,* 172 Va. 43, 54, 55, 200 S. E. 644, 649.

Here the evidence is undisputed that throughout the day the car was under the direction and control of Mrs. Pearce who planned and directed the trip. While

it is true that the plaintiff had driven earlier during the day, this did not constitute the trip a joint enterprise as to him.  *Carroll* v. *Hutchinson, supra,* 172 Va., at page 54, 200 S. E. 644.  Such control as the plaintiff had exercised over the car ended when Lumpkin took the wheel.  Thereafter the plaintiff had no right of control and direction of it.  His status was that of a mere guest in the car.

Nor did the fact that the occupants of the car were engaged in a trip for their common interests and pleasure make this a joint enterprise.  A host and his guest may together enjoy a ride without one becoming the agent of the other.  *Miles* v. *Rose,* 162 Va. 572, 588, 589, 175 S. E. 230.

Since there was no evidence before the jury which would have warranted them in finding that the plaintiff was guilty of contributory negligence, or that he and the driver of the car in which he was riding were on a joint enterprise, the defendant was not entitled to have instructions 1, 2, 3 and 5 qualified by appropriate provisions for these defenses.  Such instructions as the court gave on these defenses were more favorable to the defendant than he was entitled to.

What we have said disposes of the defendant's contention that the negligence, if any, of the driver of the car in which the plaintiff was riding was imputable to him.

It is also assigned as error that in certain instructions granted at the request of the plaintiff, the jury was told that they might find for the plaintiff "if they believe from the evidence" a certain state of facts, and that the phrase should have read "if they believe from *a preponderance of* the evidence."  It is argued that the failure to incorporate in these instructions the italicized words permitted the jury to find for the plaintiff "on a scintilla of evidence."

While the insertion of the italicized words was proper and even desirable, we do not think that under

the circumstances of this case the omission was prejudicial error.

In the first place, there is no basis for the contention that the jury might have found for the plaintiff "on a scintilla of evidence." Webster's New International Dictionary, 2d Ed., defines "scintilla" as "the slightest particle or trace." Here there is no mere "scintilla" or "the slightest particle or trace" of evidence of the defendant's negligence. The evidence of such negligence, which manifestly the jury accepted, is substantial and is found in the positive testimony of several witnesses as well as in the surrounding physical circumstances.

Moreover, the instructions complained of did not purport to deal with the weight and sufficiency of the evidence. On this subject the court told the jury in plain and unmistakable language that the burden was "on the plaintiff to prove, by a preponderance of the evidence, that the defendant, H. C. Outlaw, was guilty of negligence which proximately contributed to the accident complained of."

On the whole we find no prejudicial error in the proceedings below and the judgment complained of is

*Affirmed.*