OPINION OF THE COURT
Bernard M. Herman, J.
The defendant moves pursuant to CPLR 8501 (subd [a]) for an order requiring the plaintiff, Citibank (South Dakota), N. A., to post security for costs as a nonresident plaintiff (foreign corporation), not licensed to do business in the State of New York.
In this action the plaintiff, Citibank (South Dakota), N. A., seeks to recover moneys advanced by it for credit card purchases allegedly made by the defendant and/or his designees.
This motion involves the interpretation and possible constitutionality of CPLR 8501 (subd [a]), insofar as it applies to a national banking association such as the plaintiff herein.
CPLR 8501 in pertinent part provides as follows: “Security of Costs, (a) As of right. Except where the plaintiff has been granted permission to proceed as a poor person * * * upon motion by the defendant * * * the court or a judge thereof shall order security for costs to be given by the plaintiffs where none of them is a domestic corporation, a *1008 foreign corporation licensed to do business in the state or a resident of the state when the motion is made.”
It is the defendant’s contention that the plaintiff is a foreign (nonresident) corporation within the meaning of CPLR 8501, and that the plaintiff is therefore subject to the provisions thereof which require the posting of security for costs in such cases.
The plaintiff, on the other hand, contends that as a “national bank” it is exempt from the requirements of CPLR 8501, because State law does not apply to it, and that this section of the CPLR is unconstitutional insofar as its application to the plaintiff is concerned.
It is undisputed that the plaintiff is a “National Bank” created by and brought into existence under Federal law.
It is the opinion of this court that if the Legislature of the State of New York had either desired or intended to exempt national banks, such as the plaintiff herein, from the provisions of CPLR 8501, it could easily have done so.
Since in its infinite wisdom the Legislature of this sovereign State did not choose to do so, and inasmuch as this particular section of the CPLR is in derogation of the common law, it should be strictly construed.
It is no secret that the plaintiff in this action opted to become a foreign corporation, that is a “non-New York” corporation for a very significant reason.
It is very well known that the plaintiff removed itself to the State of South Dakota so that it could, and in fact now does, charge residents of the State of New York more interest on its credit card charges than it could legally have done, had it not so moved, and had remained, as a “corporate resident” of this State.
This course of conduct is apparently authorized under section 85 of title 12 of the United States Code.
Furthermore, it has been judicially determined (Marquette Nat. Bank v First of Omaha Corp., 439 US 299) that a national bank based in one State, can charge its out-of-State credit card customers an interest rate on unpaid balances allowed by its home State, whenever that rate is greater than that permitted by the State of the bank’s nonresident customers.
*1009 This motion, therefore, apparently presents a novel question for determination.
It appears that the facts and the questions of law applicable to the instant motion have not been decided before, and that this case is one of apparent first impression.
Research of existing case law and of the relevant statutes, reveals no prior decisions which can assist or guide the court in the determination of this motion.
There is little doubt that in the exercise of its commerce power Congress is authorized to regulate national banks to the exclusion of State control.
Whether Congress has precluded State action or has permitted State law to remain in effect, unless exercised in a manner inconsistent with Federal legislation, is often a most perplexing question. (Rice v Santa Fe Elevator Corp., 331 US 218.)
However, in only a few instances has Congress explicitly pre-empted State regulation of national banks. It has not done so with respect to the issue at hand. More commonly, it has been left to the courts to delineate the proper boundaries of Federal and State regulation.
It has often been held that national banks are governed in the daily course of business far more by the laws of the State than that of the Nation. (McClellan v Chipman, 164 US 347; National Bank v Commonwealth, 9 Wall [76 US] 353.)
The courts have consistently held that national banks are subject to State law unless the State law expressly conflicts with Federal law or infringes upon national banking laws or imposes an undue burden upon the performance of the national banks’ functions. (Anderson Nat. Bank v Luckett, 321 US 233; Waite v Dowley, 94 US 527; First Nat. Bank v Missouri, 263 US 640; Lewis v Fidelity Co., 292 US 559; Jennings v United States Fid. & Guar. Co., 294 US 216; Commercial State Bank of Roseville v Gidney, 174 F Supp 770; Brown v United Community Nat. Bank, 282 F Supp 781; Davis v Elmira Sav. Bank, 161 US 275; Joy v North, 519 F Supp 1312; Ingalls v Ingalls, 263 Ala 106; Clement Nat. Bank v Vermont, 231 US 120; State v *1010 National Newark & Essex Banking Co. of Newark, 31 NJ Super 246.)
As was held by the Supreme Court of the United States in McClellan v Chipman (supra), national banks are subject to State law unless it (1) expressly conflicts with Federal law, (2) frustrates the purposes for which the national bank was created, or (3) impairs the efficiency of the national bank to discharge the duties imposed upon it by Federal law.
There has been no showing by the moving party of any of the foregoing proscriptions, nor has the court been able to find any limitation that could be applied to the State law under consideration here.
I find that there is no conflict between the Federal law urged upon the court by the plaintiff, namely, section 24 of title 12 of the United States Code, and the State law now being attacked by the plaintiff, namely, CPLR 8501, and that the general and undiscriminative law of the State of New York which the plaintiff national bank attacks, and which requires it to put up security for costs in no way either frustrates the purposes for which the national bank herein was created, nor does the application of CPLR 8501 in any way impair the efficiency of the plaintiff national bank to discharge the duties imposed upon it by Federal law.
Especially significant, inasmuch as the plaintiff herein is a national bank located and having its principal place of business in the State of South Dakota is State of South Dakota v National Bank of South Dakota (219 F Supp 842, 844-845), wherein the United States District Court for the District of South Dakota held as follows: “A national bank is subject to state law so long as the state law does not interfere with the purposes of the bank’s creation, does not destroy its efficiency, and does not conflict with some paramount federal law”.
The plaintiff having voluntarily chosen nonresident status should not now be heard to complain, nor should it be permitted to circumvent, the fairly enacted provisions of CPLR 8501 by claiming exemption from the laws of the State of New York, on the grounds that it is a national *1011 bank having its office in the State of South Dakota, and that it is therefore subject only to Federal law and not to the law of New York.
It cannot be denied that under the identical circumstances as exist here, a nonresident natural person would be required under CPLR 8501 (subd [a]) to post security for costs. No less should be required of the plaintiff in this case.
This court holds that the National Bank Act (US Code, tit 12, § 24), relied upon by the plaintiff, merely empowers a national bank such as the plaintiff to sue in the State of New York as fully as a natural person could, and nothing more. So be it.
To interpret the National Bank Act (US Code, tit 12, § 24) as providing exemption from the requirement as to the posting of security for costs under CPLR 8501 (subd [a]) is carrying it a bit too far and severely strains the imagination.
In no way can compliance by the plaintiff with the mandatory provisions of CPLR 8501 (subd [a]) be considered as interfering with or being an undue restraint of interstate commerce.
In no way, in this court’s opinion, does section 24 of title 12 of the United States Code mandate the plaintiff’s exemption from posting security for costs as required by CPLR 8501 (subd [a]).
If plaintiff’s argument is to be accepted then, carrying it to its logical conclusion, it cannot be held liable for costs even in the event of an adverse decision.
Certainly the plaintiff does not so contend.
It is no great extension of that principle of law to require the plaintiff to post security for such payment. The unacceptable alternative would require a victorious (New York) defendant to seek recovery of costs in the State of South Dakota.
In accordance with this line of thinking, it has been held that for jurisdictional purposes, a national bank is a “citizen” of the State in which it is established or located, and that in such district alone can it be sued. (International *1012 Refugee Organization v Bank of Amer. Nat. Trust & Sav. Assn., 86 F Supp 884.)
Such a determination would for all practical purposes exempt the plaintiff from payment of a bill of costs.
Obviously, this is unfair on its face, wholly unacceptable under the circumstances prevailing herein, and would present an intolerable burden upon victorious New York defendants.
It is this court’s considered opinion that section 24 of title 12 of the United States Code was meant to deal with “banking practices” of national banks, and by no conceivable means can the requirement that the plaintiff put up security for costs in this action be considered as being a “banking practice” within the ambit of the aforesaid Federal law.
This court holds that CPLR 8501 (subd [a]) in no way pre-empts or is inconsistent with the Federal law and, that this particular section of the CPLR of the State of New York is constitutional insofar as its application to the plaintiff herein is concerned.
Accordingly, the defendant’s motion for an order requiring the plaintiff to post security for costs as provided by CPLR 8501 (subd [a]) is in all respects granted.
In accordance with this decision the plaintiff is ordered to post security for costs in the sum of $150.
Until security for costs is given pursuant to the foregoing, it is the order of this court that all proceedings other than to review or vacate this order are stayed.
If the plaintiff shall not have given security for costs at the expiration of 30 days from the date hereof, the defendant may move to dismiss the complaint.