Richard John SMITH, Appellant,

v.

STATE of Alaska, Appellee.

No. S–105.

Supreme Court of Alaska.

Sept. 27, 1985.

Rehearing Denied, Nov. 8, 1985.

Lloyd V. Anderson, Birch, Horton, Bittner, Pestinger & Anderson, and Kenneth O. Jarvi, Anchorage, for appellant.

Max N. Peabody, Shimek & Peabody, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE and COMPTON, JJ.

OPINION

COMPTON, Justice.

This is an appeal by Richard John Smith from a judgment, entered by Superior Court Judge Daniel A. Moore in accordance with a jury verdict, denying Mr. Smith any recovery on his negligence claim against the State of Alaska. Mr. Smith contends that the judgment should be reversed because the superior court erred in two initial summary judgment rulings, in excluding certain evidence, and in giving certain jury instructions and refusing to give a curative instruction. Mr. Smith also requests relief from judgment pursuant to Alaska R.Civ.P. 60(b) based on the state's alleged failure to comply with pre-trial discovery orders. Finally, Smith objects to the award of attorney's fees and costs made to the state by the superior court. For the reasons set forth below, we find no reversible error in

the superior court's decisions and we accordingly affirm the judgment.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kenai Lumber Company (hereinafter KLC) constructed a log in-feed deck and conveyor trough at its Seward, Alaska sawmill, and added debarker equipment when it modified the sawmill facilities in 1974–75. KLC's management personnel were concerned about the safety of KLC's new facilities, and requested that the state inspect the sawmill.

On May 26, 1975, Burton E. Doucette, a Voluntary Compliance Officer (VCO) for the State of Alaska Department of Labor, inspected the KLC sawmill.[2] Mr. Doucette testified that he conducted a thorough inspection, and he specifically remembered inspecting the debarker deck. Mr. Doucette identified a number of hazards, although his report does not refer to any safety code provisions.

On September 19, 1976, Richard Smith was injured in an accident at the sawmill. At the time of his injury, Mr. Smith, an employee of KLC, was assisting a fellow employee extricate a log jammed in the debarker in-feed deck. The deck and debarker's conveyor trough are elevated 15 feet in the air, and in several areas the deck has unguarded edges. Mr. Smith entered the conveyor trough, and attempted to free the jammed log with a peavey, a heavy wooden lever with a pointed tip. The peavey became stuck in the conveyor chain, and then flew out and hit Mr. Smith in the chest, knocking him backwards. Mr. Smith fell off the debarker deck and plummeted approximately fifteen feet to the concrete floor below. The fall broke Mr.

Smith's neck and severed his spinal cord, rendering him a quadriplegic.

Mr. Smith filed suit in the superior court, alleging *inter alia* that his injuries were proximately caused by the failure of the state's VCO to discover and report safety hazards at the KLC sawmill.

The trial court granted partial summary judgment holding that the state owed to Mr. Smith a duty to use due care in conducting the inspection. The court stated, however, that the scope of the state's duty was limited as a matter of law by 8 AAC 61.410–.420 to identifying safety code violations, and the state had no duty to abate the alleged debarker hazard unless the debarker constituted an "imminent danger."

Further, the trial court denied Mr. Smith's motion for summary judgment that the state's duty included the duty to train and supervise properly its voluntary compliance inspectors.[3]

At trial, the single issue litigated pertained to whether Mr. Doucette negligently failed to discover and report safety code violations or imminent dangers at the debarker area. The jury returned a special verdict that no condition which was a safety code violation existed at the debarker unit of the KLC sawmill at the time of Mr. Doucette's voluntary compliance inspection. Based upon this special verdict, and reasoning that the state could not be liable for the failure to report a code violation if in fact none existed, the superior court entered judgment for the State of Alaska. Mr. Smith appeals.

## II. SUMMARY JUDGMENT

■ Mr. Smith argues that the trial court erred in its partial summary judg-

---

1. We have carefully considered each of the issues which Mr. Smith raises on appeal. In this opinion, however, we discuss only those issues which we consider dispositive of the case.

2. The Alaska Department of Labor, Division of Occupational Safety and Health has separate sections for safety compliance and voluntary compliance. In general, safety compliance inspectors act in an enforcement capacity, issuing citations to employers who violate the various

safety codes. Voluntary compliance inspectors direct their efforts toward assisting employers in complying with the safety regulations "voluntarily" and have no enforcement powers except with regard to "imminent dangers."

3. Mr. Smith has appealed this summary judgment ruling. After consideration of the cited authority, we conclude that Mr. Smith's appeal on this point is meritless.

ment ruling which ostensibly limited the scope of the state's duty under the discretionary immunity doctrine[4] to identifying safety code violations. The court relied upon the regulation defining the state VCO's services, 8 AAC 61.410(a), which provides in pertinent part:

Upon request of an employer, the department may provide consultative and training services. Services will be limited to the interpretation and application of AS 18.60.010—AS 18.60.105 and the regulations, standards, orders and roles adopted pursuant thereto.

Mr. Smith contends that the trial court's reliance upon the discretionary immunity doctrine is misplaced because once the state undertakes a safety inspection it assumes a common law duty to exercise reasonable care.[5] He argues that the state undertook to identify hazardous or unsafe conditions even if not violations of specific safety code provisions, and that therefore its undertaking went beyond its statutory duty. He claims that the trial court's summary judgment ruling precluded him from presenting evidence of hazards which were not specifically covered by a safety code provision.

Assuming *arguendo* that the trial court erred in its summary judgment ruling ostensibly limiting the state's duty to that specified by regulation, and in precluding evidence as to a common law undertaking, Mr. Smith must show that the trial court's erroneous rulings were prejudicial, or "in-

consistent with substantial justice." Alaska R.Civ.P. 61.[6] Proof of harm beyond a reasonable doubt is not required, but the members of this court will necessarily put themselves as nearly as possible in the position of the jury to determine whether, as reasonable persons, any error committed probably affected the jury verdict. *Poulin v. Zartman*, 542 P.2d 251, 261 (Alaska 1975).

Mr. Smith did not offer any evidence which would establish liability for a common law undertaking. Quite simply, Mr. Smith did not offer evidence or make an offer of proof of a hazard which could not be classified as a safety code violation.[7] Even if the trial court erred in ostensibly limiting the state's duty, and in allegedly excluding evidence as to a common law undertaking, Mr. Smith has not established that his substantial rights have been affected.

### III. JURY INSTRUCTIONS

■ In its order granting partial summary judgment, the trial court stated:

As a matter of law, the scope of [the state's] duty included identifying safety code violations, but it did not include the duty to abate the alleged debarker hazard unless the debarker constituted an "imminent danger."

The court stated that a question of fact remained as to whether the debarker constituted an imminent danger[8] which would

---

4. *See* AS 09.50.250.

5. Mr. Smith cites two cases for this proposition, *Wallace v. State*, 557 P.2d 1120 (Alaska 1976), and *Adams v. State*, 555 P.2d 235 (Alaska 1976).

6. Alaska R.Civ.P. 61 provides as follows:
   Rule 61. Harmless Error.
   No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect

in the proceeding which does not affect the substantial rights of the parties.

7. The safety codes which the parties considered relevant are remarkably broad. For instance, the safety code requires an employer to provide its employees a safe place to work which is free from recognized hazards. Alaska General Safety Code § 01.0102 (1978).

8. The trial court's holding with regard to imminent danger is based upon 8 AAC 61.420, which provides in pertinent part:
   (a) Consultants and trainers may make recommendations regarding the elimination of any condition or practice discovered that creates a safety or health hazard during the course of an on-site visit.
   . . . .

broaden the state's duty to include abatement.

Both parties presented their cases in accordance with the court's summary judgment ruling. A number of expert witnesses for both sides testified as to whether the debarker area violated safety codes, and whether it presented an imminent danger. The trial judge, however, refused to give Mr. Smith's proposed jury instructions regarding imminent danger. The trial judge offered the following explanation:

[I]t seems to me that there is no factual basis or any legal basis under this evidence that would justify any instruction to the jury on the imminent danger situation which in my view did not exist in terms of the time of the initial inspection. And furthermore, that on the basis of proximate cause or causation, and we're talking six months later when you have no further follow-up inspection by anyone from the State as to how imminent danger could not come into play to be charged to the state inspector on a visit that occurred 16 months before. At least in my view anyway, the—I'm not giving anything on imminent danger.

Mr. Smith argues that the imminent danger instruction is supported by law, and that it was error for the superior court to refuse to give it. The state contends that any error committed by the trial court was not prejudicial because Mr. Smith was not prohibited from presenting any substantive evidence to the jury regarding hazards.

We agree with Mr. Smith that the trial court erred in assuming a controverted fact as proved, and apparently withholding the imminent danger question from determination by the jury. *See Texaco v. Layton*, 395 P.2d 393, 399 (Okla.1964). "A party is entitled to an instruction on the law applicable to his theory of the case if that theory is reasonably supported by the evidence." *Rodriguez v. Besser Co.*, 115 Ariz. 454, 565 P.2d 1315, 1322 (App.1977).

In deciding whether the trial court's failure to instruct the jury on the state's duty with respect to imminent danger code violations misled the jury, and resulted in prejudicial error under Civil Rule 61, we must examine the verdict in the context of all the instructions given to the jury. *Loof v. Sanders*, 686 P.2d 1205, 1209 (Alaska 1984); *see also Baker v. Werner*, 654 P.2d 263, 268 (Alaska 1982); *Martinez v. Bullock*, 535 P.2d 1200, 1207 (Alaska 1975) (court must consider circumstances under which the instruction was given and the instruction's probable impact on the jury).

The special verdict form submitted the following question to the jury: "Did a condition which was a safety code violation exist at the debarker unit of the Louisiana Pacific Lumber Mill at Seward, Alaska, at the time of the voluntary compliance inspection on May 26, 1975?" Jury Instruction 28, which provided the relevant safety code provisions, included the "safe place to work" code provision. That provision, Section 01.0102(a), states:

The employer shall furnish to each of his employees, employment and a place of employment which are free from *recognized hazards* that are causing or are likely to cause death or serious physical harm to his employees....

Alaska General Safety Code § 01.0102 (1978) (emphasis supplied).

We agree with the state that the trial court's error did not preclude Mr. Smith from presenting substantive evidence to the jury regarding hazards, including hazards that may have constituted imminent danger. In fact, Mr. Smith put on explicit evidence regarding imminent danger. Furthermore, Mr. Smith argued in his closing remarks that recognized hazards at the debarker made the area an unsafe place to work, and thus code violations existed.

Despite the breadth of Jury Instruction 28, the jury answered on the special verdict

---

(d) Consultants and trainers may not issue citations for alleged violations of AS 18.60.010 —AS 16.60.105 or any regulation, standard, rule or order promulgated pursuant thereto. However, if a consultant or trainer during the course of a visit to a place of employment discovers an imminent danger, he is designated an agent of the commissioner and may issue an order restraining the practice or condition creating the imminent danger.

form that no code violations existed at the debarker site at the time of the inspection. We conclude that the trial court's failure to instruct on imminent danger did not substantially influence the jury's verdict and therefore was harmless, Alaska R.Civ.P. 61. The trial court's summary judgment, evidentiary, and jury instruction rulings did not result in prejudicial error to Mr. Smith.

## IV. ATTORNEY'S FEES

Mr. Smith contends that he should not be held entirely liable for costs and attorney's fees since KLC insisted on full satisfaction of its compensation lien, pursuant to AS 23.30.015(g), making settlement impossible.[9] Mr. Smith concludes that under these circumstances it would be "unconscionable" for this court to affirm the superior court's award of attorney's fees against him.[10]

The prevailing party is entitled to an award of reasonable attorney's fees pursuant to Rule 82 of the Alaska Rules of Civil Procedure.[11] The trial court's discretion under this rule will be interfered with only when abuse is established by a "manifestly unreasonable" award. *Haskins v. Shelden*, 558 P.2d 487, 495 (Alaska 1976).

The jury trial in this case lasted three weeks. Expert witnesses were hired, numerous depositions were taken both in and out of the state, and the complex legal issues in the case required extensive briefing. The state's costs alone amounted to over $90,000, and the state's attorneys expended over 1,100 hours in the defense of this action. In light of the costs and complexity of this litigation, the superior court's award of $65,000 to the state, as the prevailing party, was not manifestly unreasonable.

AFFIRMED.

MATTHEWS and MOORE, JJ., not participating.

---

9. In this action, Mr. Smith has asserted no direct claim against KLC for the reimbursement of costs or attorney's fees. Therefore, the issue is not properly before us at this time.

10. Mr. Smith also contends that the award is unconscionable due to a release given to Louisiana-Pacific, KLC's parent corporation, by the state, which released L–P "from any claims which the State of Alaska might make against them arising out of [Smith's case against the state] and the facts upon which plaintiff's claim therein is based." Mr. Smith contends that this release extinguished KLC's obligations to contribute to Mr. Smith's costs and attorney's fees under *Cooper v. Argonaut Insurance Co.*, 556 P.2d 525 (Alaska 1976). *Cooper* is inapposite here since Mr. Smith's suit is against a third party tortfeasor. Furthermore, Mr. Smith cites no authority that an employer who has secured

a compensation lien, pursuant to AS 23.30.-015(g), has an obligation to assist an employee in an action against a third party tortfeasor.

Again, the issue is not properly before us because KLC is not a party to this action. The state's motion to join L–P as a real party in interest was denied as untimely by the trial court.

11. We note that Appellate Rule 508(g) is not applicable since this action was brought in the superior court. Appellate Rule 508(g), which is applicable only to administrative appeals from decisions of the Alaska Workers' Compensation Board, precludes the award of costs or attorney's fees against the employee in the superior or supreme courts unless the employee's position was frivolous, unreasonable, or taken in bad faith. Alaska R.App.P. 508(g).