HERRICK'S AERO–AUTO–AQUA RE-
PAIR SERVICE; Walker's Preflight;
American Pacific Aviation; Alaskan
Sky–Craft; North Echelon; St. Cloud
Aviation; Burl A. Rogers; Ketchum Air
Service, Inc.; M.R. Borer Aircraft Ser-
vices; Aero Twin, Inc.; Sunset Aircraft
Services; Northern Aircraft Mainte-
nance; the Hangar Group, Inc., d/b/a
Northshore Aviation; and Aircraft
Maintenance Unlimited, Appellants,

v.

STATE of Alaska, DEPARTMENT OF
TRANSPORTATION AND PUBLIC
FACILITIES, Appellee.

No. S–1857.

Supreme Court of Alaska.

April 29, 1988.

Robert H. Wagstaff, Anchorage, for appellants.

Gail T. Voightlander, Asst. Atty. Gen., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This case raises questions of equal protection of law between airplane repair businesses who lease land at Anchorage International Airport, who feel they have been unfairly required to meet certain insurance and permitting requirements of the airport, and itinerant mechanics at the airport who are subject to no airport regulations. In their attempt to force the itinerant mechanics to comply with the airport regulations, and as a result incur the same regulatory costs, the lessees allege discriminatory enforcement of the regulations on the part of

the airport. The lessees also allege the airport breached its lease agreement with them.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The State of Alaska owns the Anchorage International Airport and operates the facility through its Department of Transportation and Public Facilities (DOT). DOT leases property on the airport grounds to businesses supplying various aircraft and passenger services. The specific services provided by Herrick's Aero–Auto–Aqua Repair Service and the other appellants in this case (hereinafter lessees) are mechanical maintenance and airframe repair. According to provisions in their lease agreements the lessees must provide insurance against public liability for their business activity and indemnify the airport for any damages caused. The lease agreement also restricts the type of business the lessees can pursue on their leaseholds.

Another group of businesspeople also provides mechanical and airframe maintenance services at Anchorage International Airport. These people are mobile or itinerant mechanics who provide services from their vehicles at their customers' tie-downs and slips,[1] and have not obtained the statutorily required permits to conduct business on airport property. DOT knows that these itinerant mechanics are operating at the airport and has taken no action against them.

The lessees argue that these facts give rise to three causes of action. First, lessees allege that equal protection under law guaranteed by the Alaska constitution[2] is

---

1. Anchorage International Airport contains four different land areas for public parking of general aviation aircraft and two areas, Lakes Spenard and Hood, for float plane parking. There are approximately 500 parking spaces on land and 300 spaces on lakes. This total of 800 spaces for general aviation aircraft does not include parking provided by private businesses on leased land, such as the lessees involved in the present action.

   The lessees allege that in addition to the work performed by itinerant mechanics at customers' tie-downs, some repair work is also performed in the public areas at the airport. For example,

   there was testimony that floats were often removed and landing gear installed on the public ramps which provide access to Lake Hood. At times this activity prevented the leaseholders from using the public ramps for removal or launching of aircraft.

2. Alaska Const. art. I, § 1 provides:

   *Inherent rights.* This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; *that all persons are equal and entitled to equal rights, opportunities, and*

denied them by enforcement of 17 AAC 40.040(f) and (h) [3] against them, but not itinerant mechanics. Second, lessees allege that equal protection under law is denied them by the fact that DOT, through discriminatory enforcement of 17 AAC 40.-360(20),[4] requires them to provide comprehensive public liability insurance, but does not require itinerant mechanics to provide the same. Finally, lessees allege that DOT's failure to enforce 17 AAC 40.040 is a breach of the lease agreement between them. The lessees claim that, as a consequence of DOT's activity, they have been damaged to the extent of fees and insurance premiums paid and business lost because of their inability to price services competitively with the itinerant mechanics.[5]

After lessees filed their complaint, both sides moved for summary judgment on all issues. The trial court granted summary judgment to the lessees on the issue of the permit requirement, ordering DOT to enforce the requirement of 17 AAC 40.040 "to the extent that [DOT] is fiscally capable to enforce the statutes and regulations applicable to their activities consistent with [DOT's] other duties to the public." But the trial court refused to either order the regulations enforced against the itinerants or prohibit enforcement against the lessees. DOT does not appeal the summary judgment against it. However, the lessees do appeal the trial court's refusal to grant the relief requested. The trial court granted summary judgment to DOT on the breach of contract issue and the lessees appeal that ruling also.

A bench trial was held to determine whether the lessees had been denied equal protection under law by the insurance requirements of 17 AAC 40.360(20). The court applied the "rational basis test" artic-

*protection under law;* and that all persons have corresponding obligations to the people and to the State.
(Emphasis added).

3. 17 AAC 40.040(f), (h) (Eff. 4/27/79) provide in part:
   (f) Business Activities.
   (1) *Any person desiring to operate a business on an airport shall first obtain permission for the activity from the commissioner.* Application for permission shall be made as provided in 14 AAC 10.320. In addition to persons operating established businesses, any person who, on an airport, makes a sale of any kind, charges an admission fee, offers a service for a fee, or exposes an article for sale, or posts or places on parked automobiles any commercial signs, advertisements, circulars, or any other printed or written commercial matter shall be considered to be operating a business on the airport.
   (2) Any person desiring to solicit alms or funds for any purpose on any airport shall first obtain the permission of the airport manager.
   . . . .
   (h) Miscellaneous Prohibited Activities.
   (1) Use or occupancy of airport lands or facilities without the permission of the commissioner is prohibited except that use or occupancy of areas designated for specified public uses is permitted to the extent that it is in harmony with those specified public uses. (Emphasis added). The "commissioner" is the Commissioner of the Department of Transportation and Public Facilities. 17 AAC 07.900(1) (Eff. 8/11/82).

4. 17 AAC 40.360 (Eff. 4/27/79) provides in part:
   Following are provisions that, when applicable, will generally be included in all leases or permits; the words "lease," "lessor," and "lessee" in this section shall be understood to include reference to "permit," "permittor," and "permittee," respectively, where applicable:
   . . . .
   (20) The lessee shall, at his own expense, maintain and keep in force during the term of the lease, adequate insurance to protect both the lessor and the lessee against comprehensive public liability, products liability (where applicable) and property damage, in no less than the following amounts:
   (A) property damage arising from one accident or other cause in a sum of not less than $50,000;
   (B) personal injury or death, liability insurance not less than $100,000 per person and $300,000 per accident.
   The lessee shall deposit with the lessor a copy or copies of such insurance policy or policies or a certificate of such insurance coverage together with appropriate evidence that the premiums thereupon have been paid. All such insurance of the lessee shall name the lessor as an additional assured, contain a waiver of subrogation endorsement, and provide that the lessor shall be notified at least 30 days prior to any termination, cancellation, or material change in such insurance coverage.

5. The lessees also note that one of their number is an out-of-state corporation. However, discrimination against foreign corporations is not an issue in this case.

ulated by the United States Supreme Court and concluded that the financial impact on DOT of enforcing the law was a sufficient ground to justify requiring only lessees provide insurance coverage.

## II.  DISCUSSION

### A.  EQUAL PROTECTION UNDER 17 AAC 40.040(f) and (h), and 17 AAC 40.360(20).

■ In reviewing equal protection claims under the Alaska constitution this court uses a " 'uniform-balancing' test which place[s] a greater or lesser burden on the state to justify a classification depending on the importance of the individual right involved." *Alaska Pacific Assur. Co. v. Brown*, 687 P.2d 264, 269 (Alaska 1984) (citing *State v. Erickson*, 574 P.2d 1 (Alaska 1978)). *See also* Wise, *Northern Lights—Equal Protection Analysis in Alaska*, 3 Alaska L.Rev. 1, 29–35 (1986). The minimum burden the state must meet is the rational basis test described in *Isakson v. Rickey*, 550 P.2d 359 (Alaska 1976). *Brown*, 687 P.2d at 269.  This rational basis test questions whether the classification is "reasonable, not arbitrary" and rests "upon some ground of difference having a fair and substantial relation to the object of the legislation." *Isakson*, 550 P.2d at 362. Under this test, we will not "hypothesize facts which will sustain otherwise questionable legislation." [6]  *Id.*  Thus, the minimum burden that the state must meet when defending legislation challenged on equal protection grounds under the Alaska constitution is greater than that required under the United States Constitution.  The burden on the state increases in proportion to the primacy of the interest involved.  Eventually this burden reaches the functional equivalent of the federal compelling state inter-

est test in those cases where fundamental rights and suspect categories are at issue. *Brown*, 687 P.2d at 269.[7]

■ The case at bar deals with legislation of economic and commercial interest. Such legislation is traditionally subject to the lowest level of scrutiny.  *See Isakson v. Rickey*, 550 P.2d at 363 (right to a limited entry fishing permit analyzed against rational basis standard).  *See also Exxon Corp. v. Eagerton*, 462 U.S. 176, 195–96, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497, 513 (1983); *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. at 461–63, 101 S.Ct. at 722–23, 66 L.Ed.2d at 667–68.  As a result of classifying the lessees' economic interest at the low end of this spectrum, DOT need only show that its objectives were legitimate.  *Brown*, 687 P.2d at 269.  With regard to the permit requirement of AS 17 AAC 40.040(f) and (h), DOT fails to meet this burden.

First, DOT argues that there was a sufficient showing of financial impact on the state to justify DOT's enforcement policy. However, in *Brown* we wrote:

> Although reducing costs to taxpayers or consumers is a legitimate government goal in one sense, savings will always be achieved by excluding a class of persons from benefits they would otherwise receive.  Such economizing is justifiable only when effected through independently legitimate distinctions.

687 P.2d at 272 (footnote omitted).  Thus, cost savings alone are not sufficient government objectives under our equal protection analysis.

Second, DOT argues that the regulation is cumbersome to enforce because itinerant mechanics are difficult to identify and there are so many entrances to the airport

---

6. In contrast, the rational basis test articulated by the Supreme Court allows a court to "hypothesize" facts.  Under that test, a party challenging legislation on equal protection grounds, "cannot prevail so long as 'it is evident from all the considerations presented to [the legislature], and those of which *we may take judicial notice*, that the question is at least debatable.' "  *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659, 669 (1981) (quoting *United States v. Carolene Prod-*

*ucts Co.*, 304 U.S. 144, 153–54, 58 S.Ct. 778, 784, 82 L.Ed. 1234, 1242 (1938)) (emphasis added).

7. The lessees also argue that the classification must be arrived at through procedures incorporating the essential elements of due process.  Such a requirement would be unduly burdensome on the state and has not been required in the past under either the federal or Alaska equal protection tests.

that airport authorities could not possibly monitor the comings and goings of itinerant mechanics. This argument simplifies to an admission that security at the airport has been poor in the past and as a result DOT cannot be expected to change its policies now to meet constitutional requirements. However, we cannot allow an agency's substandard performance to define constitutional requirements. Nor are regulations to be enforced only where enforcement is convenient.

Finally, DOT argues that 17 AAC 40.070 (Eff. 4/27/79) allows it to make exceptions to the regulations on a showing of "good cause." This argument, however, begs the question of what constitutes "good cause." "Good cause" certainly cannot be defined as a standard in derogation of constitutional requirements, and the constitution requires a rational basis justification. If the actions of DOT fail to meet the rational basis test, then they must also fail to meet the "good cause" test.

■ Having concluded that DOT has shown no rational basis for discriminating between lessees and itinerant mechanics in its permit requirements, we turn to the question of DOT's insurance requirements. First we must determine whether DOT's construction of the regulation is reasonable. *See Rose v. State, Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982) (where an agency interprets its own regulation, a deferential standard of review applies).

17 AAC 40.360 provides initially:

[T]he words "lease," "lessor" and "lessee" in this section shall be understood to include reference to "permit," "permittor," and "permittee," respectively, where applicable.

The term "where applicable" suggests a factual analysis. Subsection (20) of this section requires "lessees" to provide insurance against comprehensive public liability, products liability, and property damage.[8] The record indicates that itinerant mechanics repair and replace airplane components in public areas on airport property. Thus itinerant mechanics may incur liability identical to that incurred by lessees, the state's potential exposure to liability being essentially no different in either instance. Therefore we conclude that it is unreasonable to exclude permittees from the requirements of subsection (20).

Next we must determine whether enforcement of subsection (20) against lessees but not permittees violates equal protection. As stated above, DOT must demonstrate only a rational basis for discriminating between the two groups. The DOT's reasons for discriminating are: (1) a greater "risk of flow through liability deriving from the landlord-tenant relationship;" (2) the greater number of services offered by the lessees, including parts sales and flight training; and (3) the lessees are full time businesspeople, while the itinerants are individuals working only part-time, sometimes for payment in kind.

DOT's third argument is a mischaracterization of the record; one of the itinerant mechanics testified at trial that his occupation was owner of an aircraft maintenance and repair business.[9] DOT's other arguments are also cavils. We discern little difference in magnitude between the flow-through liability of the lessor/lessee relationships and the liability of a property owner who knowingly allows an activity to be conducted on his or her property. *See, e.g., Webb v. City and Borough of Sitka*, 561 P.2d 731, 733 (Alaska 1977) ("A land-

---

**8.** *See supra* note 4.

**9.** In addition, the lessees themselves are engaged in a variety of businesses. For example, the four lessees who testified at trial described their businesses variously:

Mr. Hron: "Sell aircraft, fly aircraft for charter and flight instruction. Repair aircraft and sell accessories, parts, things of that nature."

Mr. Heirston: "aircraft maintenance, float repairs, float changes, annual inspections, hun-

dred hour inspections, ..." and a "flight school."

Mr. Herrick: "Aircraft maintenance and repair and general aviation." Mr. Herrick testified that he worked at his aircraft maintenance business only outside the hours of his full time job with the Air National Guard.

Mr. Gillette: "Just general aviation maintenance."

owner or owner of other property must act as a reasonable person in maintaining his property in a reasonably safe condition....") Finally, the fact that lessees offer a greater number of services is already taken into consideration by 17 AAC 40.360(20); the regulation requires products liability insurance only where applicable to the lessee's or permittee's business. Although other activities may have an effect on the lessee's or permittee's insurance premium, that fact does not constitute a reason for the airport to require minimum insurance from all lessees, but no insurance from the itinerant mechanics.

■ We conclude that DOT's enforcement policies violated the equal protection due to the lessees, and thus uphold the trial court's grant of summary judgment to the lessees. We disagree with the trial court, however, on the issue of the remedy for this violation. As our discussion makes clear, the state's financial inability to enforce a regulation equally is not a valid defense to an equal protection violation. Nor is it a valid excuse for failing to provide a remedy for the equal protection violation. When a court finds that an administrative agency is enforcing its regulations in a way which violates equal protection, it should enjoin the offending activity. It is the agency's responsibility in the first instance to develop a valid means of enforcement.

### B. THE LEASE COVENANT.

■ When extrinsic evidence is not in dispute, as in this case, this court may treat contract interpretation as a question of law. *Norton v. Herron*, 677 P.2d 877, 880 (Alaska 1984). Thus, the appropriate standard of review is substitution of judgment.

The lease covenant in question provides: 26. This lease is issued subject to all provisions and requirements of the laws and regulations of the State of Alaska relating to leasing of airport lands and granting of privileges the same as though they were set forth in full over the signatures of the contracting parties.

We construe this as a provision limiting the construction of the lease covenant to avoid

conflict with DOT regulations and Alaska law. DOT does not expressly covenant by this clause to enforce its own regulations for the benefit of the lessee, as the lessees argue. The use of the phrase *"subject to ... the laws and regulations ..."* supports this reading by making the lease subordinate to existing laws and regulations. The state has a general duty to enforce its laws which this covenant neither adds to nor incorporates. Thus, we conclude that the trial court correctly granted summary judgment for DOT on this issue.

### C. DAMAGES.

■ The lessees seek damages in both their contract and equal protection claims. Because we affirm the trial court's dismissal of the lessees' contract claim, we need not address contractual damages. In addition, we affirm the trial court's decision denying lessees' damages for violation of their right to equal protection of law.

In *Brown* we observed that an action for damages may lie for constitutional violations under an authorizing statute or some provisions of the United States Constitution. *See Brown*, 687 P.2d at 275. There is no authorizing statute in this case. The circumstances which would lead a court to award damages for a violation of a constitutional provision were discussed by the Supreme Court in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In that case the plaintiff suffered damages as the result of an unreasonable search and arrest by agents of the Federal Bureau of Narcotics. The Supreme Court allowed a damage claim because it was the only effective means of vindicating the constitutional violation. 403 U.S. at 396, 91 S.Ct. at 2004, 29 L.Ed.2d at 626. The case at bar does not involve fourth amendment guarantees. In addition, and unlike *Bivens*, injunctive relief is an available and appropriate remedy for righting any wrong done to the lessees. As a result, we hold the *Bivens* remedy of damages inapplicable to the case at bar.[10]

### D. ATTORNEY'S FEES.

■ The lessees claim that attorney's fees were improperly awarded to the state

**10.** The lessees argue that in *Division of Correc-*      *tions v. Neakok*, 721 P.2d 1121 (Alaska 1986),

because this is a public interest lawsuit. The criteria for identifying public interest suits were articulated by this court in *Alaska Survival v. State, Dep't of Natural Resources*, 723 P.2d 1281 (Alaska 1986). One of the criteria was "whether the litigant claiming public interest status would lack sufficient economic incentive to bring the lawsuit if it did not involve issues of general importance." *Id.* at 1292 (quoting *Oceanview Homeowners Assoc. v. Quadrant Constr. & Eng'g*, 680 P.2d 793, 799 (Alaska 1984)). Clearly the lessees had sufficient economic interest in eliminating competition for repair services at the airport to institute this suit. Therefore, the lessees are not public interest litigants. However, the trial court should redetermine whether the state is the prevailing party, in light of our resolution of the issues appealed.

### III. CONCLUSION.

For the reasons stated above, the decision of the trial court is AFFIRMED in part and REVERSED in part. The case is REMANDED to the trial court for further proceedings consistent with this opinion.[11]

this court allowed damages for nonenforcement of a specific regulation. *Neakok* is not analogous to this case. In *Neakok*, civil liability was found as a result of the state's duty to supervise a parolee known to the state to be dangerous. The opinion did not address equal protection, unequal enforcement or economic injuries.

11. Certain evidentiary issues were raised by the lessees in their briefs. However, these arguments were without merit and do not affect our disposition of this case.