Robert PATRICK, for himself and for all other individuals similarly situated, Petitioner,

v.

LYNDEN TRANSPORT, INC., a Washington corporation, and Jim Jansen, Respondents.

No. S–2294.

Supreme Court of Alaska.

Dec. 23, 1988.

---

William B. Schendel, Schendel & Callahan, Fairbanks, for petitioner.

Douglas S. Parker and S. Jay Seymour, Bogle & Gates, Anchorage, for respondents.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

In this case, we consider whether an out-of-state plaintiff may be statutorily required to post a bond for anticipated costs and attorney fees as a condition of maintaining suit in an Alaska court. The statutory requirement is challenged on a variety of constitutional grounds.[1]

We hold that the statute violates equal protection of law under the Alaska Constitution because it unreasonably restricts nonresident access to Alaska courts.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Robert Patrick resided in Alaska from 1981 to 1986. During that time he leased a truck to Lynden Transport, Inc. (Lynden) for its use in Alaska, and drove trucks for Lynden in Alaska. Upon leaving Alaska, Patrick moved to Idaho, where he currently resides.

In February 1987 Patrick initiated the instant suit. He is seeking damages for himself and a class of truck owners whose leases Lynden has allegedly breached. Lynden filed a motion for cost bond pursuant to AS 09.60.060.[2] Lynden's counsel asserted that Patrick was not an Alaska resident.

---

1. In *Ware v. City of Anchorage,* 439 P.2d 793 (Alaska 1968), this court upheld the statute against a challenge based on Article IV, § 15 of the Alaska Constitution. In view of our disposition of the equal protection challenge, we need not reconsider our holding in *Ware.*

2. AS 09.60.060 provides:
 *Security for costs where plaintiff a nonresident or foreign corporation.* When the plaintiff in an action resides out of the state or is a foreign corporation, security for the costs and attorney fees, which may be awarded against the plaintiff, may be required by the defendant, if timely demand is made within 30 days after the defendant discovers that the plaintiff is a nonresident. When required, all proceedings in the action shall be stayed until an undertaking executed by one or more sufficient sureties is filed with the court to the effect that they will pay the costs and attorney fees which are awarded against the plaintiff, for not less than $200. A new or an additional undertaking may be ordered by the court upon proof that the original undertaking is insufficient in amount or security.

Following oral argument on the issue, the trial court ordered that proceedings be stayed until Patrick posted a $5,000 bond to cover Lynden's anticipated costs and attorney fees. Patrick filed a petition for review in this court. We granted the petition, requesting specifically that the parties brief the following issues:

(a) Does AS 09.60.060 infringe upon the rule-making authority of the supreme court, in violation of article IV, section 15 of the Alaska Constitution?

(b) Does AS 09.60.060 violate Patrick's right to due process under the state and federal constitutions?

(c) Does AS 09.60.060 violate Patrick's right to equal protection under the state and federal constitutions?

(d) Does AS 09.60.060 violate Patrick's rights under the Privileges and Immunities Clause of the federal constitution?

## II. DISCUSSION

We begin our analysis of Alaska's non-resident security bond statute by observing that application of AS 09.60.060 does not result in a complete bar to litigation in an Alaska court. Instead, the statute requires that a nonresident plaintiff post a bond covering anticipated costs and attorney fees "which may be awarded against the plaintiff." There is no comparable requirement for resident plaintiffs. Thus, the effect of the statute is to discriminate between those nonresidents who can afford to post a bond for costs and attorney fees and those nonresidents who cannot, as well as to discriminate between nonresidents and residents generally. Such discrimination leads us to conclude that the statute is best analyzed on equal protection grounds. It is the Alaska state constitutional analysis we hereafter apply. Our reference to federal law is for comparative purposes.

 Under a federal equal protection analysis, when a statute infringes upon a fundamental interest the state must show that the statutory classification furthers a compelling state interest, yet utilizes the least restrictive means available. *See Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600, 615 (1969). When a statute infringes upon an economic interest, the federal constitution demands only that the state show that the statutory classification is rational. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461–63, 101 S.Ct. 715, 722–23, 66 L.Ed.2d 659, 667–68 (1981).

We have written that

[i]n reviewing equal protection claims under the Alaska constitution this court uses a " 'uniform-balancing' test which place[s] a greater or lesser burden on the state to justify a classification depending on the importance of the individual right involved." *Alaska Pacific Assur. Co. v. Brown*, 687 P.2d 264, 269 (Alaska 1984). (citing *State v. Erickson*, 574 P.2d 1 (Alaska 1978)). *See also* Wise, *Northern Lights—Equal Protection Analysis in Alaska*, 3 Alaska L.Rev. 1, 29–35 (1986). The minimum burden the state must meet is the rational basis test described in *Isakson v. Rickey*, 550 P.2d 359 (Alaska 1976). *Brown*, 687 P.2d at 269. This rational basis test questions whether the classification is "reasonable, not arbitrary" and rests "upon some ground of difference having a fair and substantial relation to the object of the legislation." *Isakson*, 550 P.2d at 362. Under this test, we will not "hypothesize facts which will sustain otherwise questionable legislation." *Id.* Thus, the minimum burden that the state must meet when defending legislation challenged on equal protection grounds under the Alaska constitution is greater than that required under the United States Constitution. The burden on the state increases in proportion to the primacy of the interest involved. Eventually this burden reaches the functional equivalent of the federal compelling state interest test in those cases where fundamental rights and suspect categories are at issue. *Brown*, 687 P.2d at 269.

*Herrick's Aero–Auto–Aqua Repair Serv. v. State, Dep't of Transp. & Pub. Facilities*, 754 P.2d 1111, 1114 (Alaska 1988) (footnotes omitted).

Under the Alaska state constitutional analysis, there are three steps involved in our review:

First, it must be determined ... what weight should be afforded the constitutional interest impaired by the challenged enactment.

. . . .

Second, an examination must be undertaken of the purposes served by a challenged statute.

. . . .

Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken.

*Alaska Pacific Assur. Co. v. Brown,* 687 P.2d 264, 269 (Alaska 1984).

In the case at bar, the most difficult step in the analysis is determining the primacy of the interest involved. It is clear that under both federal and Alaska law, an unlitigated claim is considered a property interest. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Bush v. Reid,* 516 P.2d 1215 (Alaska 1973). As a result the claim cannot be taken away from the plaintiff by government action without due process of law. *Logan,* 455 U.S. at 429, 102 S.Ct. at 1154, 71 L.Ed.2d at 274; *Bush,* 516 P.2d at 1218–19.

In addition, the Supreme Court has held that certain plaintiffs have a fundamental right to have their claims litigated. In *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), the Court held that a state must provide access to the courts for indigents seeking divorces who were unable to pay court filing fees. The Court reached its conclusion because of the state's monopoly over the legal status of marriage and divorce. *Id.* at 375–76, 91 S.Ct. at 784–85, 28 L.Ed.2d at 117–18. In another context, the Court has written that "[t]he right of access to the courts ... is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935, 964 (1974) (decision in the context of prisoners' rights).

*Boddie* is, however, a narrow holding. *See Boddie,* 401 U.S. at 375–76, 382, 91 S.Ct. at 784–85, 788, 28 L.Ed.2d at 117–18, 122. It is narrow because the Court recognizes very few types of cases where the state maintains a monopoly over the legal relationships between parties, or where those legal relationships are of significant constitutional interest. Thus, in *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the Supreme Court, in a 5 to 4 decision, held that due process did not require the bankruptcy court to waive $50 in fees for an indigent seeking bankruptcy protection. The Court in *Kras* reasoned that a debtor has a number of means, outside the court system, by which he can obtain redress from creditors. In addition, Kras' debt relationships "[did] not rise to the same constitutional level" as Boddie's marital relationship. *Kras,* 409 U.S. at 445, 93 S.Ct. at 638, 34 L.Ed.2d at 635. Thus, denying an indigent debtor access to the court system did not deny him "a fundamental interest that [would be] gained or lost depending on the availability of a discharge in bankruptcy." *Kras,* 409 U.S. at 445, 93 S.Ct. at 638, 34 L.Ed.2d at 636.

The dissenters in *Kras* correctly observed, we believe, that irrespective of the plaintiff's private means of restructuring his debt,

it is the government nevertheless that continues to enforce that obligation, and under our "legal system" that debt is effective only because the judicial machinery is there to collect it. The bankrupt is bankrupt precisely for the reason that the State stands ready to exact all of his debts through garnishment, attachment, and the panoply of other creditor remedies. The appellee can be pursued and harassed by his creditors since they hold his legally enforceable debts.

And in the unique situation of the indigent bankrupt, the government provides the only effective means of his ever being free of these government-imposed obligations. As in Boddie, there are no

"recognized, effective alternatives," [401 U.S.] at 376, 91 S.Ct. at 785, 28 L.Ed.2d 113.

*Kras,* 409 U.S. at 455, 93 S.Ct. at 643, 34 L.Ed.2d at 642 (Stewart, J., dissenting).

We have construed the right to court access under the Alaska Constitution to be an important right. In *Bush* we recognized that a "legal right" exists only so long as one may obtain redress through the court system. We wrote:

> The judicial process exists to reduce inchoate claims to money judgment where private settlement is unavailing (or to extinguish them as non-meritorious). Judgments may be executed or assigned for substantially their face value, presuming solvency of the debtor. Unlitigated claims for personal injury have slight market value. Deprivation of access to the courts thus denies both the ability to reduce the claim to a money judgment and the ability to collect the claim or otherwise convert it into property of an appreciable value and liquid nature during the parole status. Because the only reasonable use of the "property" represented by an unlitigated claim is reduction to judgment followed by collection or assignment, deprivation of that use deprives the claimant of the whole value of his property so long as he remains *non sui juris.*

516 P.2d at 219.

■ Thus, we conclude that even though access to a court may not be a fundamental right,[3] on Alaska's sliding equal protection scale the right is an important one. Statutory infringement upon that right is deserving of close scrutiny. The purposes served by the statute and the legislature's chosen means for effectuating those purposes must be examined.

■ Lynden argues that the purpose of the statute is to provide security for costs and attorney fees that may be awarded against a plaintiff, from whom it may be difficult to collect because of the plaintiff's nonresidence. While this purpose may be legitimate,[4] we do not believe the legislature's chosen means to effectuate this purpose are sufficiently well-tailored to its ends where the important constitutional right of access to the courts is infringed. The statute is both overinclusive and underinclusive. First, it is overinclusive because it requires that a bond be posted by all nonresident plaintiffs. Yet it cannot be assumed that all nonresident plaintiffs will be uncooperative in paying cost and attorney fee awards entered against them. Nor can it be assumed that all nonresident plaintiffs will not have assets easily attachable in satisfaction of a cost and attorney fee award. Second, the statute is underinclusive because it assumes that only nonresident plaintiffs will be difficult debtors. The statute ignores the fact that resident plaintiffs also may be uncooperative in paying cost and attorney fee awards and that defendants may have a more difficult time collecting from illiquid resident plaintiffs than from liquid foreign plaintiffs. *See Isakson v. Rickey,* 550 P.2d 359, 365 (Alaska 1976) (statute violated equal protection where classification both overinclusive and underinclusive).

---

**3.** We disagree with Patrick's contention that the statute violates his fundamental right to travel by imposing a durational residency requirement. Patrick states that if he "wished to avoid the cost and fee bond requirement, he would have to reside in Alaska throughout the pendency of the litigation." Such a conditional residency would not make Patrick a resident of Alaska. Residency is a question of intent. *See Perito v. Perito,* 756 P.2d 895 (Alaska 1988). The statute talks of nonresidents, not nondomiciliaries, and establishes no durational requirements. AS 09.60.060.

**4.** *See, e.g., Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 551–52, 69 S.Ct. 1221, 1228, 93 L.Ed. 1528, 1539 (1949) (cost bond requirement in stockholder derivative action did not

violate due process). We observe, however, that in the past the state has declined to intervene in litigation over the constitutionality of AS 09.60.060. The state has consistently said that it "does not assert any independent interest in the continuing validity of the statute. . . ." Letter from Grace Berg Schaible, Attorney General, to David Lampen, Clerk of the Supreme Court (April 30, 1987) (regarding *Rice v. The Upjohn Co.,* Supreme Court No. S–2055). *Accord* Statement of the State of Alaska (February 19, 1986) (regarding *Crittenden v. E.I. Du Pont De Nemours & Co.,* Supreme Court No. S–1369). The state also declined to intervene in the instant case. Letter from Grace Berg Schaible, Attorney General, to David Lampen, Clerk of Appellate Courts (Aug. 14, 1987).

We recognize that statutes requiring security bonds of nonresidents currently exist in a number of states. *See, e.g.,* Cal. Civ.Proc.Code § 1030 (West Supp.1987); N.Y.Civ.Prac. L. & R. § 8501 (McKinney 1981); Or.Rev.Stat. § 20.160–.170 (1987); Wash.Rev.Code Ann. § 4.84.210 (1962 and Supp.1987). Generally, however, these states do not have a rule comparative to Civil Rule 82, which allows partial compensation for attorney fees as a matter of course. Costs and attorney fees are not inconsequential.[5]

We conclude that a statute which restricts access to Alaska courts by means of a bond requirement for only nonresident plaintiffs is not sufficiently related to the purpose of providing security for cost and attorney fee awards to defendants to withstand a challenge under the Alaska Constitution's guarantee of equal protection under the law.[6]

### III. CONCLUSION

For the reasons set forth above, the order of the trial court is REVERSED.

MATTHEWS, C.J., dissents.

**5.** Patrick convincingly demonstrates that Civil Rule 82 attorney fee awards often amount to considerable sums, citing thirteen recent cases in which this court affirmed attorney fee awards ranging from $4,000 to over $348,000. *See Steenmeyer Corp. v. Mortenson–Neal,* 731 P.2d 1221, 1226 (Alaska 1987) ($17,500 award upheld); *Crook v. Mortenson–Neal,* 727 P.2d 297, 306 (Alaska 1986) ($15,337.60 award upheld); *Tolstrup v. Miller,* 726 P.2d 1304, 1307–08 (Alaska 1986) ($5,000 award without trial upheld); *Dahle v. Atlantic Richfield Co.,* 725 P.2d 1069, 1074–75 (Alaska 1986) ($55,000 award upheld); *Hutchins v. Schwartz,* 724 P.2d 1194, 1203 (Alaska 1986) ($17,000 award upheld); *Wickwire v. Arctic Circle Air Services,* 722 P.2d 930, 935 (Alaska 1986) ($12,000 award upheld); *Horton v. Hansen,* 722 P.2d 211, 217–18 (Alaska 1986) ($21,932.11 award upheld); *Alaskan Village, Inc. v. Smalley,* 720 P.2d 945, 950–51 (Alaska 1986) ($79,781.88 award upheld); *Fairbanks North Star Borough v. Tundra Tours, Inc.,* 719 P.2d 1020, 1037–38 (Alaska 1986) ($172,414.89 award upheld); *Alaska State Fed'n of Labor v. State, Dep't of Labor,* 713 P.2d 1208, 1211–12 (Alaska 1986) ($8,700 and $5,550 awards to separate defendants upheld); *Smith v. State,* 706 P.2d 1160, 1164 (Alaska 1985) ($65,000 award upheld); *Ehredt v. DeHavilland Aircraft Co. of Canada,* 705 P.2d 913, 918 n. 10 (Alaska 1985)

MATTHEWS, Chief Justice, dissenting.

The majority holds that AS 09.60.060 violates equal protection of the law under the Alaska Constitution because it unreasonably restricts non-resident access to Alaska Courts. Because I believe that the statute as applied in the instant case is not unconstitutional, I respectfully dissent.

Although access to courts is not a fundamental right, it nevertheless is an important one. In *Bush v. Reid,* 516 P.2d 1215 (Alaska 1973), this court held that a statute which denied parolees access to the courts violated the due process and equal protection clauses of both the United States Constitution and the Alaska Constitution. *Id.* at 1220. The court explained that "[b]ecause the only reasonable use of the 'property' represented by an unlitigated claim is reduction to judgment followed by collection or assignment, deprivation of that use deprives the claimant of the whole value of his property so long as he remains *non sui juris.*" *Id.* at 1219. However, this is not a case in which a claimant's access to courts has been denied.

($4,000 award upheld); *Dura Corp. v. Harned,* 703 P.2d 396, 412 (Alaska 1985) ($348,264 award upheld).

Cases cited by our dissenting colleague do not involve cost bonds in amounts remotely close to the amounts that potentially can be required in Alaska when attorney fees are taken into account. *See, e.g., Hawes v. Club Ecuestre El Comandante,* 535 F.2d 140 (1st Cir.1976) (cost bonds ranging from $500 to $2,500 per plaintiff upheld); *Citibank (South Dakota), N.A. v. Gonzalez,* 114 Misc.2d 1007, 452 N.Y.S.2d 1012 (N.Y. Civ.Ct.1982) ($150 cost bond); *Wright v. Sears, Roebuck & Co.,* 116 Ariz. 391, 569 P.2d 821 (1977) ($250 cost bond); *State v. Superior Court,* 195 Wash. 426, 81 P.2d 286 (1938) ($2,000 cost bond for 53 plaintiffs, statutory maximum of $200 per plaintiff). *In Re Merrill Lynch Relocation Management, Inc.,* 812 F.2d 1116 (9th Cir. 1987), did not involve a pre-litigation bond at all.

**6.** As a result of our disposition we need not discuss the parties' arguments regarding whether the statute violates federal equal protection, state or federal due process, the federal constitution's Privileges and Immunities Clause, or this court's rule-making authority arising from the Alaska Constitution.

The cost bond statute does not deny an out-of-state plaintiff access to Alaska's courts. Rather, it requires the plaintiff to post security to cover costs and fees which the court may, in its discretion, award against him in the event that he loses the case. Upon posting the cost bond, the plaintiff has full access to the courts.

In the instant case Patrick never alleged inability to obtain a bond. As the representative of a class of plaintiffs, he is required by Civil Rule 23 to possess financial capacity to handle this sort of cost. See In re Consumer Power Company Litigation, 105 F.R.D. 583, 607 (E.D.Mich.1985); Fulk v. Bagley, 88 F.R.D. 153, 168 (M.D.N.C. 1980). Thus, this case does not present a situation where a plaintiff is denied access to the courts by operation of the cost bond statute.[1] The appropriate question posed by this case is therefore whether imposing a bond requirement on non-residents who are able to afford a bond violates the non-residents' right to equal protection.

Where the cost-bond statute does not seriously impede access to the courts, it does not merit close scrutiny. Herrick's Aero–Auto–Aqua Repair Serv. v. State, Dep't of Transp. & Pub. Facilities, 754 P.2d 1111, 1114 (Alaska 1988). As such, this court should look to whether the statutory distinction is "reasonable, not arbitrary" and rests "upon some ground of difference having a fair and substantial relation to the object of the legislation." Id. (quoting Isakson v. Rickey, 550 P.2d 359 (Alaska 1976)). The statute easily satisfies this test.

The cost bond statute reflects a reasonable assumption that it will be more difficult to enforce an award against a non-resident than against a resident. Residents are more likely than non-residents, for instance, to own assets subject to execution within the state. Enforcing an Alaska judgment in another state is certainly more expensive than enforcing it here. Local counsel must be employed, and a separate action filed. Several courts have held that

this is a legitimate basis for a non-resident cost bond statute. See, e.g., In re Merrill Lynch Relocation Management, Inc., 812 F.2d 1116, 1122 (9th Cir.1987); Hawes v. Club Ecuestre El Comandante, 535 F.2d 140, 145 (1st Cir.1976); Russell v. Cunningham, 233 F.2d 806 (9th Cir.1956). The rationale for these cases applies with even greater force in Alaska, because of Alaska's remote position relative to other states.

The statute is also an acceptable means to accomplish the legislature's goal of ensuring collectability of fees and cost awards against non-resident plaintiffs. While the statute may be somewhat overinclusive and underinclusive, it is not fatally so. The fact that the statute applies to all non-resident plaintiffs, and not only to "uncooperative" ones, is not of significance in the absence of some indication that there exists a reliable means of distinguishing cooperative from uncooperative plaintiffs at the outset of litigation. Moreover, as one court has stated, "the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking a problem at all." Dandridge v. Williams, 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). A state may use somewhat overinclusive classifications as a legitimate prophylactic device to assure that the statute's ends will be achieved. See also L. Tribe, American Constitutional Law, § 16–4, at 999 (1978).

The statute's failure to require a cost bond from "uncooperative" residents does not render it fatally underinclusive. Again, the obvious problem of distinguishing cooperative from uncooperative plaintiff-debtors at the beginning of a lawsuit lends an air of unreality to this point. Further, "[u]nderinclusive classifications violate the equal protection clause if the classification is 'clearly wrong, [and] a display of arbitrary power, [rather than] an exercise of judgment.'" Gilman v. Martin, 662 P.2d 120, 126 (Alaska 1983) (quoting Mathews v. De Castro, 429 U.S. 181, 185,

---

1. The statute would probably be unconstitutional as applied to a litigant who could not obtain a bond. In that case, the statute's bond require-

ment would operate as a bar to adjudication of rights similar to that in Bush v. Reid, 516 P.2d 1215 (Alaska 1973).

97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976)). *See also* L. Tribe, *American Constitutional Law*, § 16–4, at 997. The cost bond statute represents an exercise of judgment by the legislature that non-residents, as a class, present a greater likelihood of collection difficulties than do residents. This judgment is neither clearly wrong nor arbitrary. Indeed, a number of legislatures have enacted similar provisions which have been judicially approved.[2]

In summary, this case does not present a situation where a statute infringes upon an important right. The statute as applied here to a non-resident who has the financial ability to post a cost bond does not seriously impede access to the courts. The statute is sufficiently well tailored to its purpose of assuring that successful litigants will be able to collect awards of costs and fees to pass constitutional muster.

2. *See In re Merrill Lynch Relocation Management, Inc.,* 812 F.2d 1116, 1123 (9th Cir.1987) (Oregon statute which imposed liability for costs on attorney for non-resident plaintiff—such liability was subject to discharge by filing a cost bond—found not a violation of equal protection since the legislature could rationally conclude that "[c]osts were more difficult to recover from nonresidents than residents...."); *Hawes v. Club Ecuestre El Comandante,* 535 F.2d 140 (1st Cir.1976) (upholding cost bond rule and listing 22 district courts which have promulgated cost bond rules specifically applicable to non-resident plaintiffs); *Citibank (South Dakota), N.A. v. Gonzalez,* 452 Misc.2d 1007, 114 N.Y.S.2d 1012 (N.Y.Civ.Ct.1982); *Borders Electronic Co. v. Quirk,* 97 Nev. 205, 626 P.2d 266 (1981); *Wright v. Sears, Roebuck & Co.,* 569 P.2d 821 (Ariz.1977); *Gram v. Village of Shoreview,* 259 Minn. 145, 106 N.W.2d 553 (1960); *State v. District Court,* 111 Mont. 178, 107 P.2d 880 (1940); *Outlaw v. Pearce,* 176 Va. 458, 11 S.E.2d 600 (1940); *State v. Superior Court,* 81 P.2d 286 (Wash.1938).